# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-2066

DENNIS M. THUN, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 19, 2007          Decided   April 23, 2008   )

*Kenneth M. Carpenter,* of Topeka, Kansas, for the appellant.

*Jeffrey J. Schueler*, with whom *Tim McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Mary Ann Flynn*, Principal Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and SCHOELEN, *Judges*.

GREENE, *Chief Judge*: Veteran Dennis M. Thun appeals, through counsel, a June 22, 2005, decision of the Board of Veterans' Appeals (Board) that determined that his disability rating for his service-connected post-traumatic stress disorder (PTSD) did not warrant referral for extraschedular consideration under 38 C.F.R. § 3.321(b)(1) (2007).  Record (R.) at 1-19.  Mr. Thun argues that the Board misinterpreted § 3.321, and thus, failed to apply the law correctly when evaluating his claim for an increased rating.  Because we find no error in the Board's conclusion that Mr. Thun's asserted inability to advance at his place of employment and to receive a higher salary did not constitute marked interference with employment that rendered his 70% disability rating inadequate, thereby warranting extraschedular consideration, the June 2005 Board decision will be affirmed.

# I. BACKGROUND

Mr. Thun served in the U.S. Marine Corps from April 1966 to April 1968, including combat service in Vietnam. R. at 23. In January 2000, a VA regional office (RO) awarded him service connection for PTSD and assigned a 10% disability rating. R. at 77-79. In July 2001, the RO increased his disability rating to 30%. R. at 119-24. Mr. Thun appealed that rating to the Board and argued that his circumstances should be considered for an extraschedular rating. R. at 100-03. He asserted that his PTSD symptoms prevented him from advancing or being promoted at his job as a senior systems programmer. R. at 173. After two Board remands, the RO increased his disability rating to 70% and found that his situation did not warrant referral for extraschedular consideration. R. at 399-406, 414-18. Mr. Thun again appealed to the Board, and in June 2005 the Board denied him any further increase in his disability rating and found that referral for extraschedular consideration was not warranted. Concerning Mr. Thun's employment history, the Board found that

> [t]he evidence of record shows that [Mr. Thun] has not had marked interference with obtaining or retaining employment. He has maintained steady, full-time, gainful employment since discharge from service, and has worked at his current job since May 1986.

R. at 18. It is that Board determination that Mr. Thun appeals to the Court.

# II. ARGUMENTS

Mr. Thun asserts that, in deciding that his case did not warrant extraschedular consideration, the Board failed to consider, as marked interference with his employment, that the salary he receives from his job was substantially limited by his service-connected PTSD. He stated to the Board that less-experienced coworkers were promoted before him, thus receiving higher salaries, and argued that his PTSD symptoms strained his relationships with his direct managers and prevented his own promotion. He maintains that this evidence established a significant disparity between his current income (including his VA benefits) and the income he believes he could receive, but for the severity of his service-connected disability. He contends this disparity is a loss of earning capacity sufficient to trigger extraschedular consideration. Mr. Thun further asserts that the Board erred when it found that marked interference with employment is limited to circumstances in which the claimant's disability impacts the claimant's ability to obtain or retain employment. The Secretary argues that the Board had a plausible basis for concluding that extraschedular consideration was not warranted.

2

## III. LAW

Veterans with disabilities resulting from personal injury or disease contracted during active service and in the line of duty are entitled to service-connected benefits. *See* 38 U.S.C. § 1110. To determine the level of compensation benefits due to a veteran, Congress has granted the Secretary the authority "to adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries," based upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Using this authority, the Secretary has established the rating schedule in a series of regulations located in part 4 of title 38 of the Code of Federal Regulations, that is "primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service." 38 C.F.R. § 4.1 (2007); *see* 38 C.F.R. § 3.321(a) (titled "Use of rating schedule"). Once a disability has been found to be service connected, VA applies the criteria established in diagnostic codes (DCs) contained in the rating schedule to assign a percentage of disability that "represent[s] as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." 38 C.F.R. § 4.1; *see* 38 C.F.R. § 3.321(a). The ultimate percentage of disability rating assigned to a veteran is "considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of the disability." 38 C.F.R. § 4.1.

Generally, evaluating a disability using either the corresponding or analogous DCs contained in the rating schedule is sufficient. *See* 38 C.F.R. §§ 4.20 ("Analogous ratings"), 4.27 ("Use of diagnostic code numbers") (2007). Indeed, Congress has instructed VA to readjust the schedule of ratings when needed to maintain its relation to the particular average impairment in earning capacity presented by certain disabilities. *See* 38 U.S.C. § 1155; 38 C.F.R. § 3.321(b)(1). Because the ratings are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. However, in exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating based on the following guidance:

> To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director,

Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra[]schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b)(1). When either a claimant or the evidence of record suggests that a schedular rating may be inadequate, the Board must specifically adjudicate the issue of whether referral for an extraschedular rating is warranted. *See Colayong v. West*, 12 Vet.App. 524, 536 (1999). The Board may determine, in the first instance, that a veteran has not presented evidence warranting referral for extraschedular consideration, provided that it articulates the reasons or bases for that determination. *See* 38 U.S.C. § 7104(d)(1); *Colayong*, 12 Vet.App. at 536-37; *Bagwell v. Brown*, 9 Vet.App. 337, 339 (1996). As with all Board decisions, the Board's decision on referral for an extraschedular rating must be "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). The Board's assignment of a degree of disability under the rating code and its determination of whether an extraschedular rating is appropriate are factual determinations that the Court reviews under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Johnston v. Brown*, 10 Vet.App. 80, 84 (1997); *Cromley v. Brown*, 7 Vet.App. 376, 378 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

## IV. ANALYSIS

Our review of this appeal presents two questions: (1) What standard must be met to require referral of a claim to the Under Secretary for Benefits or the Director, Compensation and Pension Service for a determination of whether an extraschedular rating under 38 C.F.R. § 3.321 is appropriate? and (2) did the Board properly apply that standard to Mr. Thun's claim?

### A. Required Showing for Referral for Application of § 3.321

The determination of whether a claimant is entitled to an extraschedular rating under

§ 3.321(b) is a three-step inquiry, the responsibility for which may be shared among the RO, the Board, and the Under Secretary for Benefits or the Director, Compensation and Pension Service. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available scheduler evaluations for that service-connected disability are inadequate, a task performed either by the RO or the Board (if an appeal is filed). *See Fisher v. Principi*, 4 Vet.App. 57, 60 (1993) ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."); 38 C.F.R. § 3.321(b)(1); VA Adjudication Procedure Manual pt. III, subpart iv, ch. 6, sec. B(5)(c) (instructing VA adjudicators to submit claims for extraschedular consideration if "the scheduler considerations are considered inadequate for an individual disability"); *see also Floyd v. Brown*, 9 Vet.App. 88, 95 (1996) (Board may consider whether extraschedular referral is required). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned scheduler evaluation is, therefore, adequate, and no referral is required. *See* VA Gen. Coun. Prec. 6-1996 (Aug. 16, 1996) [hereinafter G.C. Prec. 6-96], para. 7 (when service-connected disability affects employment "in ways not contemplated by the rating schedule" § 3.321(b)(1) is applicable). However, in the second step of the inquiry, if the scheduler evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step–a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating.

We cannot agree with Mr. Thun's argument that an inadequacy in the rating schedule can be established solely by showing an asserted gap between his income (including his VA benefits) and the income of similarly qualified workers in his field. This argument is based on the faulty proposition that a schedular rating for a service-connected disability is not adequate unless it compensates the veteran *for the actual individualized income* that is not realized but for that disability. We observe that the VA schedule for disability ratings dates back to VA Regulation No. 3, promulgated by a 1933 Executive order.[1] *See* Exec. Order No. 6091, Mar. 31, 1933 ("The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations."). An explanatory statement attached to the 1933 Executive order specifically noted that the rating schedule being created *was in contrast* to the 1924 World War Veterans' Act which evaluated disabilities based on the average impairment of earning capacity in occupations similar to that of the injured man at the time of enlistment.[2] *See id.*; World War Veterans' Act of 1924, Pub. L. No. 242, 43 Stat. 607. Unlike the World War Veterans' Act, under VA's rating schedule since 1933, the actual wages or income earned by a particular veteran are not considered relevant to the calculation of the average impairment of earning capacity caused by a disability. Indeed, given that the average impairment in earning capacity is the standard, within the current rating schedule, many veterans receiving benefits may experience a greater or lesser impairment of earning capacity than average as a result of their disability. However, extraschedular consideration cannot be used to undo the approximate nature that results from the rating system based on average impairment of earning capacity authorized by Congress. *See* 38 U.S.C. § 1155 (granting Secretary authority to adopt schedule based upon the average impairments of earning capacity). Accordingly, we hold that, when the RO or Board evaluates whether the criteria in the rating schedule adequately correspond to the symptomatology and severity of a claimant's disability,

---

[1] Prior to the 1958 codification of title 38 of the U.S. Code, the laws and rules governing veterans benefits were contained in various public laws and in Executive orders promulgated by the President pursuant to his authority under Pub. L. No. 73-2 (1933).

[2] Under the World War Veterans' Act, two veterans could receive different compensation for identical disabilities based upon the income they received in their occupation prior to service. This consideration of occupational factors was criticized during the time that it was used for rating veterans' disabilities as being too subjective, overly complex, and difficult to apply to veterans who had never held a civil occupation. *See* William P. Dillingham, *Federal Aid to Veterans 1917-1941*, U. FLA. PRESS (1952).

§ 3.321(b)(1) does not contemplate or require a calculation of the income that may not have been realized because of a service-connected disability.[3]

### B. The Board's Application of § 3.321(b)(1)

Here, the Board found that the medical evidence of record does not show that Mr. Thun's disability picture was unusual or exceptional in nature as to render his 70% schedular rating inadequate. R. at 18. In addition to its findings noted previously, the Board also considered that Mr. Thun had maintained "full time, gainful employment since his discharge from service," and found that his asserted difficulties at work were "squarely contemplated by the rating criteria supporting a 70[%] rating." *Id.* (finding that Mr. Thun's symptoms of impaired judgment and inability to maintain work relationships were contemplated under 38 C.F.R. § 4.130, DC 9411 (2007)). The Board further concluded that there was no evidence that Mr. Thun had frequent hospitalizations or that he had "marked interference with obtaining and retaining employment." *Id.*

Mr. Thun argues that the Board's determination that he has not experienced marked interference with *obtaining or retaining* employment was not a proper basis for finding the schedular rating to be adequate. We agree with Mr. Thun that requiring that there be evidence of interference with "obtaining or retaining" employment exacts a higher standard than is required for a finding of "marked interference with employment" under § 3.321(b)(1). Indeed, difficulty in obtaining or retaining employment is an element considered for establishing a rating of *total* disability based on individual unemployability (TDIU). *See* 38 C.F.R. §§ 4.15, 4.16 (b) (2007) (all veterans who are unemployable by reason of service-connected disability shall be rated totally disabled). To require the same showing to establish one factor for review in determining entitlement to extraschedular consideration would create an impermissible overlap between these two concepts and implies that they are sui generis in name only. *See Kellar v. Brown*, 6 Vet.App. 157 (1994) (evaluations regarding employability in § 4.16 and interference with employment contained in § 3.321(b)(1) are different metrics); *Stanton v. Brown*, 5 Vet.App. 563, 564-70 (1993) (issue of extraschedular rating is separate from issue of TDIU rating); *see also* G.C. Prec. 6-96, para. 9 (claimant's assertion of

---

[3] Evidence of a claimant's lost income, for example, due to time missed from work because of a service-connected disability, might be relevant, after the RO or Board has found the rating schedule to be inadequate, in the second or third steps of the analysis described above, but unequivocally is not part of the threshold inquiry into the adequacy of the rating schedule.

7

unemployability does not inherently represent assertion that schedular ratings are inadequate pursuant to § 3.321(b)(1)). Consistent with VA regulations and Court precedent, extraschedular consideration may be warranted for disabilities that present a loss of earning capacity that is less severe than one where the veteran is totally unemployable. *See Kellar*, *supra*; *Moyer v. Derwinski*, 2 Vet.App. 289, 293-94 (1992); 38 C.F.R. § 3.321(b)(1). Therefore, the Board's reasoning–that Mr. Thun's disability did not warrant extraschedular consideration because he did not establish an inability to *obtain* or *retain* employment–was error.

However, contrary to Mr. Thun's argument, the Board's error did not prejudice his claim because the Board's decision not to refer his case for extraschedular consideration was not based solely on that finding. As discussed previously, in cases regarding whether extraschedular referral is warranted, the threshold determination is whether the disability picture presented in the record is adequately contemplated by the rating schedule. Here, the Board made such a finding. The Board found that Mr. Thun's disability picture was not so unusual or exceptional in nature as to render his 70% schedular rating inadequate. Mr. Thun's condition was evaluated as a mental disability pursuant to 38 C.F.R. § 4.130, DC 9411, the criteria of which was found by the Board to specifically contemplate the level of occupational and social impairment caused by his disability. *Id*. VA has explained[4] that "[a]lthough certain symptoms must be present in order to establish the diagnosis of PTSD . . . it is not the symptoms, but their effects, that determine the level of impairment." *See Mauerhan v. Principi*, 16 Vet.App. 436, 443 (2002) (citing 61 Fed. Reg. 52,695, 52,697 (Oct. 8, 1996) and holding that § 4.130 "'is a reasonable and permissible construction of 38 U.S.C. § 1155'").

In an August 2003 VA medical examination, the examiner recorded Mr. Thun's symptoms

---

[4] The supplementary information for the October 1996 amendment to the schedule for mental disorders stated:

Ratings are based primarily upon the average impairment in earning capacity, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it (*see* 38 CFR § 4.15). Defining levels of disability for mental disorders in terms of an individual's earnings would be inconsistent with that principle and, furthermore, would not take into account other variables that might affect earnings, such as the presence and severity of other service-connected or non-service-connected disabilities, differences in the prevailing wage in different localities, part time employment, etc. For these reasons, it is not feasible to evaluate mental disabilities based on the veteran's earnings.

61 Fed. Reg. 52,697 (1996) (italics added).

and opined that they "are extremely distressing to [Mr. Thun] and cause impairment in his ability to work." R. at 271. The Board acknowledged that he experienced significant difficulties at work but found that those difficulties "are squarely contemplated by the rating criteria supporting a 70[%] rating . . . with no unusual factors." R. at 18; *see* 38 C.F.R. § 4.130, DC 9411, 9440. Indeed, the very effects of Mr. Thun's PTSD symptoms that he asserts have kept him from receiving a promotion–including impaired judgment and inability to maintain effective working relationships–are criteria described as occupational impairments that are used for evaluating mental disorders under DC 9411, rather than earmarks of an exceptional or unusual disability picture with marked interference with employment. *See* Brief at 17; R. at 16, 98; 38 C.F.R. § 4.130, DC 9440 (70% rating warranted for PTSD that causes occupational impairment with deficiencies in most areas). The Board's observations in comparing the disability picture asserted by Mr. Thun with the expressed impairments in earning capacity contemplated by DC 9411 reveal that his experiences are congruent with the average impairment in earning capacity represented by a 70% disability rating for PTSD. Thus, based on the evidence of record, the Board's finding that Mr. Thun's disability picture cannot be characterized as an exceptional case, so as to render the schedular evaluations inadequate, is not clearly erroneous. *See Gilbert*, *supra*. Consequently, the Board did not err in concluding that Mr. Thun was not entitled to referral for an extraschedular rating. *Id*.

Accordingly, based on our discussion and holdings above, because the threshold determination for a referral for extraschedular consideration was not met, the Board's error in requiring a showing that Mr. Thun's PTSD markedly interfered with his obtaining or retaining employment was nonprejudicial to Mr. Thun's increased rating claim. The Board's decision will, therefore, be affirmed. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (declining to remand for reasons-or-bases deficiency when doing so would place unnecessary burdens on VA and would be of no benefit to appellant); s*ee also* 38 U.S.C. § 7261(b)(2) (requiring Court to take due account of rule of prejudicial error); *Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004).

## V. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the June 22, 2005, Board decision is AFFIRMED.