Citation Nr: 1550122 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 15-10 761 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California


THE ISSUE

Entitlement to higher evaluation for adenocarcinoma of prostate, assigned a 100 percent evaluation prior to February 1, 2015 and 10 percent thereafter.


ATTORNEY FOR THE BOARD

Tahirih S. Samadani, Counsel


INTRODUCTION

The Veteran had active service from August 1955 to October 1981.

This matter comes before the Board of Veterans' Appeals (Board) from a November 2014 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) of the Phoenix, Arizona. In this decision, the RO reduced the Veteran's prostate cancer evaluation from 100 percent to a noncompensable evaluation. Jurisdiction of the case returned to the RO in San Diego, California.
The Veteran's claims file is a "paperless" claims file. All records in the Veteran's case are maintained in Virtual VA and Veterans Benefits Management System (VBMS).

The issue of entitlement to a higher evaluation for erectile dysfunction has been raised by the record in a December 2014 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The Veteran's residuals of prostate cancer included daytime voiding intervals between two and three hours, and nocturnal voiding two to three times per night. He had obstructive voiding manifested as weak stream or decreased force of stream. No renal dysfunction or urinary tract infections is shown, nor has there been a recurrence or metastasis of the Veteran's prostate cancer, or evidence showing that he is receiving surgical or X-ray treatment, antineoplastic chemotherapy, or other therapeutic procedure.


CONCLUSION OF LAW

Resolving all doubt in the Veteran's favor, the criteria for a 20 percent disability rating, but not higher, for residuals of prostate cancer have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§4.1-4.14, 4.115a, 4.115b, Diagnostic Code 7528 (2015).



REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

In correspondence dated in March 2008, the agency of original jurisdiction (AOJ) satisfied its duty to notify the Veteran under 38 U.S.C.A. § 5103(a) (West 2014) and 38 C.F.R. § 3.159(b) (2015). Specifically, the March 2008 notice informed the Veteran of information and evidence necessary to substantiate the claim for service connection for prostate cancer and of the relative burdens of VA and the Veteran, relating the information and evidence that VA would seek to provide and that which he was expected to provide. Service connection was granted for the Veteran's prostate cancer in October 2008. In the October 2008 rating decision, the RO informed the Veteran that a 100 percent is assigned for prostate cancer during active malignancy or antineoplastic therapy. Six months following completion of treatment, residual disability is determined by findings from a VA examination conducted at that time. Since there was a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination. The Veteran received such an examination in April 2014. As the Veteran's prostate cancer was found to be in remission, the RO began the process of reducing this evaluation. The Veteran received notice of the reduction in an April 2014 rating decision and a noncompensable evaluation for prostate cancer was assigned in a November 2014 rating decision. 

VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C.A. § 5103A (West 2014) and 38 C.F.R. § 3.159(c) (2015). Service treatment records have been associated with the claims file. All identified and available post-service treatment records have been secured. The Veteran has been medically evaluated in conjunction with his claim, and medical opinions have been sought. The Board has reviewed the resultant reports and finds that the examination and opinion of record are adequate for rating purposes. Specifically, they were conducted based on a review of the pertinent information in the claims file and a complete examination of the Veteran. The opinions offered were accompanied by reasonable rationales that are supported by the clinical evidence. Thus, the Board finds that the duty to assist has been fulfilled.

Analysis

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015).

The Veteran's entire history is reviewed when making a disability determination. See 38 C.F.R. § 4.1 (2015). But where service connection has already been established, and increase in the disability rating is at issue, it is the present level of the disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). 

The Veteran's residuals of prostate cancer are rated under 38 C.F.R. § 4.115b, Diagnostic Code 7528. Under Diagnostic Code 7528, malignant neoplasms of the genitourinary system warrant a 100 percent evaluation. The Note to Diagnostic Code 7528 states: Following the cessation of surgical, x-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100 percent shall continue with a mandatory VA examination at the expiration of six months. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter. If there has been no local reoccurrence or metastasis, rate on residuals as voiding dysfunction or renal dysfunction, whichever is predominant.

Voiding dysfunction is rated based on symptoms of urine leakage, frequency, or obstructed voiding. 38 C.F.R. § 4.115a (2015).

Continual urine leakage, post-surgical urinary diversion, urinary incontinence, or stress incontinence is rated as follows: a 20 percent evaluation is warranted where the veteran requires the wearing of absorbent materials which must be changed less than 2 times per day. A 40 percent evaluation is warranted for urine leakage/incontinence requiring the wearing of absorbent materials which must be changed 2 to 4 times per day. A 60 percent evaluation is warranted for urine leakage/incontinence requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day. 38 C.F.R. § 4.115a (2015).

Urinary frequency is rated as follows: a 10 percent evaluation is warranted for a daytime voiding interval between two and three hours, or; awakening to void two times per night. A 20 percent evaluation is warranted for a daytime voiding interval between one and two hours, or; awakening to void three to four times per night. A 40 percent evaluation is warranted for a daytime voiding interval less than one hour, or; awakening to void five or more times per night. 38 C.F.R. § 4.115a (2015).

Obstructive voiding is rated as follows: A noncompensable evaluation for obstructive symptomatology with or without stricture disease requiring dilatation 1-2 times per year. A 10 percent evaluation is warranted for marked obstructive symptomatology (hesitancy, slow or weak stream, decreased force of stream) with any one or combination of the following: (1) Post void residuals greater than 150 cc.; (2) Uroflowmetry; markedly diminished peak flow rate (less than 10 cc/sec); (3) Recurrent urinary tract infections secondary to obstruction; (4) Stricture disease requiring periodic dilatation every 2 to 3 months. A 30 percent evaluation is warranted for urinary retention requiring intermittent or continuous catheterization. 38 C.F.R. § 4.115a (2015).

The Veteran's residuals of prostate cancer were assigned a 100 percent evaluation beginning January 11, 2008 under Diagnostic Code 7528. The Veteran was assigned a noncompensable evaluation beginning February 1, 2015, but after receiving new evidence, the RO assigned a 10 percent evaluation. The Veteran's residuals of prostate cancer are currently assigned a 10 percent evaluation beginning February 1, 2015 which is the date that the Veteran was notified that this evaluation would be reduced. The Veteran believes a higher evaluation is warranted.

In April 2014, the Veteran was afforded a VA examination for prostate cancer. The examiner diagnosed with a history of prostate cancer and erectile dysfunction. The examiner found that the prostate cancer was now in remission. The examiner noted that the Veteran had voiding dysfunction due to prostate cancer. He had no urine leakage, did not require an appliance, and had no increase in urinary frequency. He did have signs or symptoms of obstructed voiding including weak stream and decreased force of stream. He had no recurrent symptomatic urinary tract or kidney infections. He had erectile dysfunction due to prostate cancer and age effects. He had no renal dysfunction or scars. April 2014 PSA results were 0.05.

In a statement received in December 2014, the Veteran claimed that no prostate examination was completed by the VA on April 2014 except for a PSA test. The Veteran disagreed that the VA could determine whether his prostate cancer is in fact in remission. He reported awakening to void two to three times per night. He had daytime voiding intervals between two to three hours. He noted that there was no post void residuals test taken since 2008. He also reported erectile dysfunction.

A September 2014 MRI of the pelvis noted no evidence for metastatic disease. In October 2014, the Veteran's physician referred the Veteran to oncology to evaluate for possible metastatic disease to the upper thoracic region. 

The Veteran received a VA examination for his back in April 2015. The examiner diagnosed the Veteran with degenerative disc disease of the lumbosacral spine.
In April 2015, the Veteran underwent a lumbar facet procedure, based on the diagnosis of lumbar spondylosis.

As there was cessation of surgical, x-ray, antineoplastic chemotherapy or other therapeutic procedure, because the prostate cancer was found to be in remission, a total (100 percent) rating is no longer warranted. The Board acknowledges that the Veteran's physician referred the Veteran to oncology in October 2014 to evaluate for possible metastatic disease to the upper thoracic region. Treatment records and a VA examination of the back since that time have not shown metastatic disease of the back. The April 2014 VA examiner also found that the Veteran's prostate cancer was in remission. Therefore, the Board notes that there is no evidence of recurrence or metastasis since his treatment in 2007. See Diagnostic Code 7528, 38 C.F.R. § 4.115b. 

The Board acknowledges the Veteran's statements that his prostate cancer is not in remission, but the Board finds that the medical evidence, including the April 2014 examiner's opinion that his prostate cancer is in remission and the MRI results showing no metastatic disease outweighs the Veteran's lay statements on this inherently medical question. 

The analysis then turns on the residuals of the cancer, whether they be voiding dysfunction or renal dysfunction. Notably, there is no evidence of renal dysfunction. Therefore, the Board's analysis focuses on voiding dysfunction. As noted, such dysfunction includes urine leakage, frequency, or obstruction. In this case, the Board finds that a 20 percent is warranted for the Veteran's residuals regarding urinary frequency, and specifically in that he awakens to void two to three times per night. This more nearly approximates the 20 percent rating category, which contemplates voiding three to four times per night. See 38 C.F.R. § 4.115a. 

While a 20 percent evaluation is warranted, the Board finds that a higher evaluation is not. There is no evidence of daytime voiding intervals of less than one hour, or; awakening to void five or more times per night. Although the April 2014 examiner noted that the Veteran had a weak stream and decreased force of stream, he did not have urinary retention requiring intermittent or continuous catheterization. He did not have a history of urinary tract infections or kidney infections. He did not have voiding dysfunction that requires wearing of absorbent materials which must be changed two to four times per day. He also has no renal dysfunction. Therefore, the preponderance of the evidence is against the assignment of a disability rating in excess of 20 percent for the Veteran's residuals of prostate cancer on a schedular basis.

The Board has also considered whether the Veteran's claim should be referred for an extraschedular rating. See 38 C.F.R. § 3.321(b) (2015); Thun v. Peake, 22 Vet. App. 111, 114 (2008).

The Board finds that referral for extraschedular consideration is not warranted. The Veteran's service-connected residuals of prostate cancer are contemplated and reasonably described by the rating criteria under Diagnostic Code 7528. See 38 C.F.R. §§ 4.115a, 4.115b (2015). In this regard, the Veteran's disability has specifically shown itself to be manifest by obstructive voiding (weak stream) and urinary frequency, all of which are symptoms precisely described by the rating criteria set forth in Diagnostic Code 7528. See id. Accordingly, the Board finds that a comparison of the Veteran's residuals of prostate cancer with the schedular criteria does not show that they present "such an exceptional or unusual disability picture . . . as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b) (2015). Consequently, the Board finds that the available schedular evaluations are adequate to rate this disability. As such, in the absence of this threshold finding, there is no need to consider whether there are "related factors" such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board's finding that the rating criteria were adequate to evaluate the claimant's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment).
Furthermore, there is no evidence of hospitalization or marked interference with employment. The April 2014 examiner found that the Veteran's prostate cancer did not impact his ability to work. Thus, overall, the Board finds that the Veteran's residuals of prostate cancer are not shown to be so unusual so as to take his overall disability picture out of the norm.

In summary, the Board concludes that having resolved all doubt in the Veteran's favor, a 20 percent disability rating is warranted and that the preponderance of the evidence is against the assignment of a disability rating in excess of 20 percent for the entire period on appeal. Staged ratings are not warranted. See Hart, supra.

The Board acknowledges that the Veteran's erectile dysfunction is a result of his prostate cancer. The Veteran claims that higher evaluation is warranted and this issue has been referred to the RO for appropriate action.

The Veteran appears to argue that special monthly compensation is warranted for loss of use of a creative organ, but the Veteran has been granted special monthly compensation on account of loss of use of creative organ since January 11, 2008. 

ORDER

Entitlement to a 20 percent disability rating for residuals of prostate cancer is granted, subject to regulations applicable to the payment of monetary benefits.


____________________________________________
BETHANY L. BUCK
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs