Citation Nr: 1744011 
Decision Date: 09/18/17 Archive Date: 10/10/17

DOCKET NO. 12-22 305 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to an extraschedular rating for coronary artery disease (CAD), status post myocardial infarction and stenting, previously characterized as ischemic heart disease (IHD) (heart disability).

2. Entitlement to a total disability rating based on individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: Pennsylvania Department of Military and Veterans Affairs


WITNESSES AT HEARING ON APPEAL

Appellant and his spouse

ATTORNEY FOR THE BOARD

J. Crawford, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1963 to August 1967.

This case comes before the Board of Veterans' Appeals (Board) from a September 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania. In that decision, the RO granted entitlement to service connection for IHD and assigned a 10 percent rating effective December 10, 2009. The Veteran timely appealed the assigned initial rating. 

In February 2012, the RO assigned an earlier effective date of April 12, 2009, for the grant of service connection and assigned a temporary total (100 percent) rating from November 2, 2009, to March 1, 2010, pursuant to 38 C.F.R. § 4.104, Diagnostic Code 7006, which provides for such a rating for a myocardial infarction. The RO continued the 10 percent rating from that date. Furthermore, in an August 2016 rating decision, the RO granted service connection for prostate cancer with an evaluation of 100 percent effective June 10, 2016. 

Previously before the Board in December 2015 were the issues of entitlement to an initial schedular rating higher than 10 percent for CAD, status post myocardial infarction and stenting, previously characterized as IHD; entitlement to an extraschedular rating for CAD, status post myocardial infarction and stenting, previously character as IHD; and entitlement to a total disability rating based on individual unemployability (TDIU). The Board denied the issue of entitlement to an initial schedular rating higher than 10 percent for CAD, status post myocardial infarction and stenting, previously characterized as IHD. The other two issues were remanded for further development. 

In May 2014, the Veteran testified during a hearing at the RO before the undersigned Veterans Law Judge; a transcript of that hearing is of record. Although the Veteran's representative was unable to attend the Board hearing, the Veteran chose to go forward with the assistance of a Veterans Benefits Counselor (VBC) pursuant to 38 C.F.R. § 20.701 (2017). See May 2014 Board Hearing Transcript, at 2. 


FINDINGS OF FACT

1. The probative evidence of record does not show that the Veteran's service-connected CAD, status post myocardial infarction and stenting, previously characterized as IHD, presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 

2. The probative evidence of record does not show the Veteran to be rendered unable to obtain or maintain gainful employment due to his service-connected heart disability. 


CONCLUSIONS OF LAW

1. The criteria for an extraschedular rating for the Veteran's service-connected coronary artery disease (CAD), status post myocardial infarction and stenting, previously characterized as ischemic heart disease (IHD), have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.27, 4.104, Diagnostic Codes (DCs) 7006-7005 (2017).

2. The extraschedular criteria for a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.340, 3.341, 4.3, 4.15, 4.16, 4.18, 4.19, 4.25 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Procedural Duties

The Veterans Clams Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159; Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, Pub. L. No. 112-154, §§ 504, 505, 126 Stat. 1165, 1191-93. The requirements of the statutes and regulation have been met in this case. VA satisfied this duty with a November 2016 notification letter. Furthermore, these issues were previously on appeal before the Board in December 2015. 

In addition, VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate the claim, and affording the Veteran multiple VA examinations. 

Neither the Veteran nor his representative has raised any other issues with the duty to notify or assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board...to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to the duty to assist argument). For these reasons, the Board concludes that VA has fulfilled its duty to assist the Veteran in this case. Hence, there is no error or issue that precludes the Board from addressing the merits of this appeal.

II. Extraschedular Consideration

 A. Legal Criteria

Consideration of referral for an extraschedular rating requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating criteria adequately contemplate the Veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Id. If the schedular evaluation does not contemplate the level of disability and symptomatology and is found inadequate, then the second inquiry is whether the exceptional disability picture exhibits other related factors, such as marked interference with employment. Id. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Director to determine whether an extraschedular rating is warranted. Id.

In December 2015, the Board found that there was evidence that the Veteran's service-connected CAD, status post myocardial infarction and stenting, previously characterized as IHD resulted in symptoms not contemplated by the schedular criteria and marked interference with employment. Additionally, the Board found that there was evidence indicating that the Veteran's heart disability was one cause of his unemployment, and therefore, the issue of entitlement to a TDIU had been raised by the evidence of the record. The Board referred both issues of entitlement to an extraschedular rating for the Veteran's heart disability and entitlement to a TDIU to the Director of Compensation Service under 38 C.F.R. § 3.321(b) and 38 C.F.R. § 4.16(b). 

In December 2016, the Director of the Philadelphia RO drafted a memo to the Compensation Service Director recommending a finding that available evidence failed to show an exceptional or unusual disability picture with such factors as marked interference with employment or frequent periods of hospitalization so as to render impractical the application of the regular schedular standards and a finding that the evidence of record failed to demonstrate that the Veteran's unemployability was due solely to his service-connected heart condition. In March 2017, the Director of the Compensation Service issued a memo concurring with the recommendation.




 B. Facts

The Veteran's medical examinations and medical records describe symptomatology that is covered by the rating schedule for his heart disability. In October 2011, the Veteran submitted a letter from his private physician, Dr. R.S. Dr. R.S. wrote that the Veteran had severe cardiac disease with angina and edema, and multiple cardiac catheterizations and stents. Due to the Veteran keeping on top of his health, he had not suffered a large myocardial infarction that would impact on his ejection fraction or left ventricular size. She noted that although he had been able to complete 10 metabolic equivalents (METs) of activity on the July 2009 stress test, he had ischemia by electrocardiogram (EKG or ECG) and leg fatigue with recurrent arteriosclerotic events. Although his perseverance in seeking good medical attention led him to have a higher functional level, this did not mean his CAD was less severe than a person who functioned at a lower level of MET activity.

Furthermore, in April 2011, January 2012, and March 2013 VA IHD DBQs prepared by Dr. R.S. indicated that the Veteran did not have congestive heart failure, that the level of METs the Veteran could perform was 10.4. There was no evidence of cardiac hypertrophy or dilation. Left ventricular ejection fraction was 60 percent. Dr. R.S. indicated in the remarks section that the Veteran retired in 2006 secondary to his disability.

During the May 2014 Board hearing, the Veteran testified that he could not walk around with his grandchildren, could no longer play sports, and could not drive far. The Veteran and his wife, a nurse, testified that there was a significant decrease in energy and endurance and the Veteran was frequently and easily fatigued.

An April 2013 Doylestown Nuclear Stress Test report indicated that baseline ECG was normal, and the achieved 7.70 METs. ECG was positive for ischemia and imaging showed an ejection fraction of 64 percent.

A June 2014 Doylestown Hospital Exercise Stress Test report indicated that the Veteran achieved 8.0 METs, had no chest pain with exercise, and good exercise tolerance for his age. Baseline ECG was normal and peak exercise ECG showed no ST segment depression suggestive of ischemia.

 C. Analysis 

Currently, the Veteran is rated under Diagnostic Codes 7006-7005 under 38 C.F.R. § 4.104 for his heart disability. Symptoms listed under these diagnostic codes include fatigue, angina, dizziness, syncope, continuous medication, and congestive heart failure. Based on the foregoing evidence, including the Veteran's reports of decreased energy due to his heart disability, the schedular rating criteria adequately contemplates the Veteran's disability picture. The medical record does not indicate that there was exceptional or an unusual disability picture. Although the Veteran has indicated that he retired in 2006 due to his heart disability, there is no evidence in the record showing that the Veteran's disability interfered with his employment or that he had frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 

The Board also notes that in November 2016, the RO sent the Veteran a letter requesting the Veteran to provide medical evidence showing that his service-connected heart condition presented such an exception or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. To this date, the Veteran has not responded. Therefore, the Board finds that the Veteran is not entitled to an extraschedular rating for CAD, status post myocardial infarction and stenting, previously characterized as IHD.

III. TDIU

 A. Legal Criteria

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of his service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16 (2017). If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). 

For the purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. Id. 

Subsection (b) of 38 C.F.R. § 4.16 addresses "extraschedular" TDIU. It states that it is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation Service, for extraschedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue. 38 C.F.R. § 4.16(b).

"Substantially gainful employment" is that employment "which is ordinarily followed by the non-disabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). As further provided by 38 C.F.R. § 4.16 (a), "Marginal employment shall not be considered substantially gainful employment."

The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

 B. Facts and Analysis

Here, the Veteran has asserted that his service-connected CAD, status post myocardial infarction and stenting, previously characterized as IHD, rendered him unemployable. Specifically, during his May 2017 Board hearing, he stated that he decided to retire when he had a heart attack in 2006. For his heart disability, the Veteran is rated at 10 percent from April 21, 2009, 100 percent from November 2, 2009, and 10 percent from March 1, 2010. Due to the fact that the Veteran is rated at 100 percent from November 2, 2009, to March 1, 2010, a TDIU for this period is rendered moot. See Herlehy v. Principi, 15 Vet. App. 33, 35 (2001) (finding a request for TDIU moot where 100 percent schedular rating was awarded for the same period). 

Due to the fact that the Veteran did not meet the requirements under 38 C.F.R. § 4.16(a), in December 2015 the Board referred the issue to the Director of Compensation Service for extraschedular consideration under 38 C.F.R. § 4.16(b). As mentioned previously, the Director of Compensation Service concluded that the evidence of record failed to demonstrate that the Veteran's unemployability was due solely to his service-connected heart condition. Upon review of the evidence the Board also concludes that a grant of TDIU is not warranted. Although the Veteran asserted that he was unemployed due to his heart disability, the evidence of record does not show as such. None of the medical examinations reported the impact that the Veteran's heart disability had on his employability. Additionally, in November 2016, the RO sent the Veteran a letter requesting the Veteran to fill out a VA Form 21-8940, Veterans Application for Increased Compensation Based on Unemployability. The Veteran never responded. 

Therefore, it is not shown that the Veteran's service-connected heart disability precluded his ability to secure and follow substantially gainful employment. As the preponderance of evidence is against the Veteran's claim seeking a TDIU, there is no benefit of the doubt to be resolved. See 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2017). Accordingly, a TDIU is not warranted.


ORDER

Entitlement to an extraschedular rating for CAD, status post myocardial infarction and stenting, previously characterized as IHD, is denied.

Entitlement to a TDIU is denied. 




______________________________________________
JAMES D. RIDGWAY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs