﻿Citation Nr: AXXXXXXXX
Decision Date: 06/29/20 Archive Date: 06/29/20

DOCKET NO. 190703-10832
DATE: June 29, 2020

ORDER

1. Entitlement to a rating in excess of 50 percent for obstructive sleep apnea (OSA) is denied. 

2. Entitlement to a compensable rating for bilateral hearing loss is denied. 

3. Entitlement to a separate compensable rating for erectile dysfunction (ED) is denied. 

REMANDED

4. Entitlement to service connection for chronic obstructive pulmonary disease (COPD) is remanded. 

5. Entitlement to service connection for bronchial asthma is remanded. 

6. Entitlement to a rating in excess of 20 percent for type 2 diabetes mellitus, with ED, is remanded. 

7. Entitlement to a rating in excess of 10 percent for right lower extremity peripheral neuropathy is remanded. 

8. Entitlement to a rating in excess of 10 percent for left lower extremity peripheral neuropathy is remanded. 

FINDINGS OF FACT

1. At no time under consideration is the Veteran’s OSA shown to have been manifested by chronic respiratory failure with carbon dioxide retention or cor pulmonale, or to have required tracheostomy. 

2. At no time under consideration is the Veteran’s hearing acuity shown to have been worse than Level II in either ear. 

3. The Veteran’s ED is manifested by loss of erectile power, but is not shown to have been manifested by deformity or any other functional limitation. 

CONCLUSIONS OF LAW

1. A rating in excess of 50 percent for OSA is not warranted. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321(a), 4.1, 4.3, 4.7, 4.97, Diagnostic Code (Code) 6847. 

2. A compensable rating for bilateral hearing loss is not warranted. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.85, Code 6100, 4.86. 

3. A separate (other than by virtue of SMC) compensable rating for ED is not warranted. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 4.1, 4.31, 4.115b, Code 7522. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The appellant is a Veteran who served on active duty from October 1966 to October 1970. These matters are before the Board of Veterans’ Appeals (Board) on appeal of a May 2019 Department of Veterans Affairs (VA) rating decision that granted service connection for bilateral hearing loss, rated 0 percent, effective January 9, 2019, granted service connection for ED, rated 0 percent, associated with type 2 diabetes mellitus, currently rated 20 percent rating, continued 10 percent, each, ratings for right and left lower extremity peripheral neuropathy, , and denied service connection for bronchial asthma and COPD, and a June 2019 rating decision that granted service connection for OSA, rated 50 percent, effective January 9, 2019. The Veteran timely appealed the rating decisions to the Board and requested the Board direct review option. Therefore, the Board’s review is limited to evidence on record at the time of the May 2019 rating decision for the issues of service connection for COPD and bronchial asthma, and regarding the ratings for bilateral hearing loss, ED, a for type 2 diabetes mellitus, and ratings in excess of 10 percent, and right and left lower extremity peripheral neuropathy, and the evidence of record at the time of the June 2019 rating decision for the issue seeking a rating in excess of 50 percent for OSA. 

The Board notes that that the issue of entitlement to a rating in excess of 30 percent for posttraumatic stress disorder (PTSD) was considered in the May 2019 rating decision. Instead of opting-in to the modernized system (AMA) following the issuance of the Statement of the Case (SOC), the Veteran chose instead to pursue an appeal on that issue as a legacy appeal by filing a substantive appeal (Form 9) and not opt-in to AMA within 60 days following the issuance of the SOC. Therefore, the PTSD issue will be decided in a separate legacy decision at a later date. 

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity caused by the given disability. Separate diagnostic codes identify the various disabilities. 38 C.F.R. § 1155; 38 C.F.R. Part 4. 

When the appeal is from the initial rating assigned with a grant of service connection, (as with OSA, bilateral hearing loss, and ED) the severity of the disability during the entire period from the grant of service connection to the present is to be considered. “Staged” ratings may be assigned for distinct periods when different levels of impairment are shown. Fenderson v. West, 12 Vet. App. 119 (1999). 

When a question arises as to which of two ratings applies under a particular code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining, including regarding degree of disability, is to be resolved in favor of the Veteran. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. 

1. Entitlement to a rating in excess of 50 percent for OSA is denied. 

Under Code 6847, a 50 percent rating is warranted for sleep apnea that requires the use of a breathing assistance device such as continuous airway pressure (CPAP) machine. 38 C.F.R. § 4.97. The maximum 100 percent rating is warranted for chronic respiratory failure with carbon dioxide retention or cor pulmonale, or; requires tracheostomy. Id. 

The Veteran contends that his sleep apnea is more severe than reflected by the 50 percent rating assigned. 

In a December 2018 private medical statement, the provider notes that the Veteran has a diagnosis of sleep apnea, and that a CPAP machine was prescribed. She opined that the Veteran’s sleep apnea was at least as likely as not related to his service-connected PTSD. 

On March 2019 VA sleep apnea examination, it was noted that OSA had been diagnosed in 2011. The Veteran reported that he used a CPAP, and indicated that continuous medication was not required to control his sleep disorder. It was noted that a 2014 sleep study showed moderate OSA, and there was no evidence of chronic respiratory failure, cor pulmonale, or requirement for a tracheostomy. The provider opined that the Veteran’s OSA was at least as likely as not caused by his service-connected PTSD. 

Throughout the appeal period (from January 9, 2019) the Veteran received medical treatment at VA and private facilities. He did not report that any of the treatment records assessed evaluated the nature, extent, and severity of his sleep apnea (and did not request that they be obtained (as evidence pertinent to this claim for increase). Based on this evidence, the assigned 50 percent rating for the Veteran’s sleep apnea fully contemplates his symptoms. The sleep apnea has not been characterized by chronic respiratory failure, cor pulmonale, or requirement of a tracheostomy. 38 C.F.R. § 4.97, Code 6847. His symptoms do not approximate the criteria for a rating in excess of 50 percent, and the appeal in the matter must be denied. 

2. Entitlement to a compensable rating for bilateral hearing loss is denied. 

Ratings for hearing loss disability are derived from Table VII of 38 C.F.R. § 4.85 by a mechanical application of the rating schedule to numeric designations assigned after audiometric evaluations are performed. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). The numeric designations correspond to eleven auditory acuity levels, indicated by Roman numerals, where Level I denotes essentially normal acuity and Level XI denotes profound deafness. The assignment of the appropriate numeric level is based on the results of controlled speech discrimination tests in combination with average puretone threshold. The average threshold is obtained from puretone audiometry in the frequencies of 1000, 2000, 3000, and 4000 Hertz. 38 C.F.R. § 4.85. 

Rating specialists use either Table VI or VIa of 38 C.F.R. § 4.85 to determine the correct Roman numeral designation. Table VIa is used when speech discrimination tests are inappropriate due to language difficulties, inconsistent speech discrimination scores, etc., or where there is an exceptional pattern of hearing loss (as defined in 38 C.F.R. § 4.86). One such pattern occurs when puretone thresholds at each of the four specified frequencies are 55 decibels or more. Another occurs when the puretone threshold at 1000 Hertz is 30 decibels or less and the puretone threshold at 2000 Hertz is 70 decibels or more. 38 C.F.R. § 4.86.

On December 2018 private audiometry, puretone thresholds, in decibels, were:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 50 75 75 75 69

LEFT 40 55 65 65 56

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 92 percent in the left ear. Under Table VI, the Veteran had level II hearing acuity in the right ear and level I hearing acuity in the left ear, warranting a 0 percent rating under Table VII. 

On March 2019 VA audiology assessment audiometry, puretone thresholds were: 

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 50 75 80 80 71

LEFT 45 60 65 60 58

Speech audiometry revealed speech recognition ability of 94 percent in the right ear and 96 percent in the left. Under Table VI, the Veteran had level II hearing acuity in each ear, warranting a 0 percent rating under Table VII. The Veteran reported that his hearing loss renders him unable to communicate well with family and friends.

The record does not include any further pertinent audiometry during the period for consideration on appeal. As the assignment of a disability rating for hearing impairment is derived by mechanical application of the rating schedule to the numeric designations assigned after audiometry evaluations are rendered, there is no doubt as to the proper evaluation to be assigned. Lendenmann, 3 Vet. App. 345; 38 C.F.R. § 4.85, Code 6100. The findings on official audiometry fall squarely within the parameters of the criteria for a 0 percent rating. 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990). The Board has no reason to question the Veteran’s reports of impairment due to his hearing loss; however, the problem understanding conversations he describes is encompassed by the criteria for the 0 percent schedular rating assigned. Therefore, those criteria are not inadequate, and referral for extraschedular consideration is not necessary. See Thun v. Peake, 22 Vet. App. 111 (2008). 

3. Entitlement to a separate compensable rating for ED is denied. 

ED, of itself, is compensated by an award of SMC (which the Veteran receives). Otherwise, a separate compensable schedular rating for ED may be assigned when there is associated deformity of the penis (under 38 C.F.R. § 4.115b, Code 7522), which provides for a 20 percent rating for deformity of the penis with loss of erectile power. 

In every instance where the schedule does not provide a 0 percent evaluation for a diagnostic code, a 0 percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31. 

On March 2019 VA male reproductive system examination, ED was diagnosed secondary to diabetes mellitus. The Veteran reported that in 2009 he noticed that he would occasionally have an insufficient erection, and at times he has the urge and desire for an erection but lacks physical function. He reported that the condition has stayed the same since 2009, medications are not effective, and a penile pump implant was installed in 2013. On examination his penis and testes were normal. 

The Veteran’s reported difficulty maintaining erections is compensated by his award of SMC for such impairment. Additional compensation is not warranted unless there is related deformity of the penis with loss of erectile power (or other compensable impairment of function). The record does not show, or suggest. that at any time since service connection for ED was established (January 9, 2019), the Veteran has had penile deformity (he has not alleged he has penile deformity). A March 2019 examination found his penis to be normal. Generally, compensable schedular ratings are assigned to reflect impairment of earning capacity (from the disability in question). See 38 C.F.R. § 4.1. Impairment of earning capacity due to ED is neither shown, nor alleged. Consequently, a separate compensable rating for the ED, apart from the award of SMC for such disability, is not warranted. 

Neither the Veteran nor his representative has alleged any symptoms of, or impairment due to, ED not encompassed by the schedular criteria or acknowledged by the SMC award, and the record does not suggest that such exist. See Doucette v. Shulkin, 28 Vet. App. 366, 69-70 (2017) (the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record). The preponderance of the evidence is against this claim. Accordingly, the appeal in the matter must be denied. 

REASONS FOR REMAND

4., 5., 6., 7., 8. Entitlement to service connection for COPD and bronchial asthma and to ratings in excess of 20 percent for type 2 diabetes mellitus and in excess of 10 percent, each, for right and left lower extremity peripheral neuropathy. 

The Veteran reported in various VA treatment records (to include those from September 2015, April 2017, and October 2017) that he sought private treatment for diabetes, neuropathy, and (possibly) COPD and bronchial asthma (which suggests that he continued to seek treatment for such disabilities during the period for consideration on appeal). Although he reported such private treatment, the Regional Office (RO) did not ask him to identify the private providers (so that records of the treatment could be obtained and reviewed), which constitutes a pre-decisional duty to assist error. Remand to obtain the identified private treatment records and any other relevant non-VA primary care records is necessary. Although the provider of a March 2019 VA opinion in the matters opined that the Veteran’s COPD and bronchial asthma were not related to his service, if records received pursuant to the development being sought tend to relate his COPD to service, or confirm a diagnosis of bronchial asthma, adequate medical advisory opinions in those matters would be necessary. Further, if the above development suggests that during the period on appeal, (from January 2018 for the increased rating claims) the Veteran’s diabetes and/or right and left lower extremity peripheral neuropathies increased in severity, further development in those matters would be necessary. 

The matters are REMANDED for the following:

1. Ask the Veteran to identify all private providers of evaluations and/or treatment he received for COPD, bronchial asthma, diabetes, and right and left lower extremity neuropathies, and submit authorizations for VA to secure for the record complete clinical records of such evaluations and treatment from all providers identified. Obtain those records. 

2. If (and only if) the above development suggests that COPD is related to the Veteran’s service, and/or confirms a diagnosis of bronchial asthma, arrange for a respiratory diseases examination of the Veteran to determine the existence and ascertain the likely etiology of the claimed COPD and bronchial asthma. In such event, the Veteran’s entire record must be reviewed by the examiner. On examination and interview of the Veteran and review of his record, the examiner should:

(a) Identify (by diagnosis) each respiratory disability entity found (specifically addressing the diagnoses of COPD and bronchial asthma). 

(b) Identify the likely etiology of each respiratory disability entity diagnosed. Specifically, is it at least as likely as not (a 50% or greater probability) that such disability is related to the Veteran’s military service/events therein? 

(c) If a chronic respiratory disability is not diagnosed, reconcile the conclusion with the medical evidence of record suggesting that he has COPD (the March 2019 VA opinion) and has bronchial asthma (the December 2018 private medical statement). 

Fully explain the rationale for all opinions, with citation to supporting clinical data/lay statements, as deemed appropriate. 

3. If, (and only if) private records received pursuant to the above-sought development suggest that the Veteran’s diabetes has worsened during at any time during the period for consideration on appeal, arrange for the Veteran’s record to be forwarded to the March 2019 VA diabetes examiner for re-review and an addendum medical advisory opinion regarding the severity of his service-connected diabetes. [If that provider is unavailable, the record should be forwarded to another appropriate physician for review and the opinion sought.] The criteria for rating diabetes in 38 C.F.R. § 4.120 must be reviewed by the provider. All findings must be described in detail. It should specifically be noted whether the diabetes requires one or more daily injections of insulin, restricted diet, and regulation of activities, and whether he has compensable complications of diabetes other than ED and bilateral lower extremity peripheral neuropathy, which are already service-connected). If so, there should be an assessment of the severity of such complications (if indicated, by specialty consult). 

4. If, (and only if) the above development suggests that the Veteran’s right and left lower extremity peripheral neuropathy has worsened during the period for consideration on appeal, arrange for the Veteran’s record to be forwarded to the March 2019 VA peripheral nerves examiner for re-review and an addendum medical advisory opinion regarding the severity of the bilateral lower extremity neuropathy. [If that provider is unavailable, the record should be forwarded to another appropriate physician for review and the opinion sought.] The criteria for rating peripheral neuropathy in 38 C.F.R. § 4.124a must be reviewed by the examiner. Findings and related impairment of function noted should be described in sufficient detail to allow for consideration of the criteria in 38 C.F.R. § 4.124a. On review of the record, the examiner should:

(a) Identify each right and left lower extremity nerve affected by neuropathy. 

(b) Identify all manifestations of the impaired nerves identified, noting their severity, frequency, and duration, and describe in detail all related functional impairment. 

(c) Indicate whether the level of disability found is consistent with complete or incomplete paralysis of the affected nerve. If there is incomplete paralysis of a nerve, indicate whether the level of incomplete paralysis is mild, moderate, moderately severe, or severe with marked muscular atrophy (and explain the basis for the assessment). 

Explain the rationale for all opinions, citing to supporting clinical findings, prior medical opinions, and medical literature, as deemed appropriate. 

 

 

GEORGE R. SENYK

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Bayles, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.