Citation Nr: 1610614 
Decision Date: 03/16/16 Archive Date: 03/23/16

DOCKET NO. 09-46 752 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts


THE ISSUES

1. Entitlement to a higher initial rating for post-traumatic stress disorder (PTSD), rated 30 percent disabling from January 23, 2007 to July 29, 2009, 50 percent disabling from July 30, 2009 to July 17, 2013, and 70 percent disabling from July 18, 2013. 

2. Entitlement to an initial rating in excess of 10 percent for headaches.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

L. Driever, Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Marine Corps from August 2000 to February 2001, from January 2003 to January 2004, and from December 2005 to January 2007. 

These claims come before the Board of Veterans' Appeals (Board) on appeal of October 2007 and December 2007 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Boston, Massachusetts. 

In June 2013, the Board remanded these claims to the RO via the Appeals Management Center in Washington, D.C., for additional development. 

During the course of this appeal, the Veteran requested a hearing before the Board. VA scheduled the Veteran for such a hearing, but on that date, the Veteran failed to report. Inasmuch as the Veteran did not request a postponement of the hearing, the Board deems his hearing request withdrawn pursuant to 38 C.F.R. § 20.702(d) (2015). 

VA processed this appeal, in part, electronically, utilizing Virtual VA, one of VA's paperless claims processing systems. Review of these claims therefore contemplates not only the physical claims file but also the electronic record. 


FINDINGS OF FACT

1. From January 23, 2007 to July 29, 2009, the Veteran's PTSD symptoms, including emotional numbness, high levels of anxiety, irritability, major mood variations and sleep disturbances, rage, hypervigilance, and a startle reflex caused social impairment and minimal occupational impairment. 

2. From July 30, 2009 to July 17, 2013, the Veteran's PTSD caused occupational and social impairment with reduced reliability and productivity. 

3. Since July 18, 2013, the Veteran's PTSD has caused occupational and social impairment, but not total, with deficiencies in most areas such as work, family relations, judgment, thinking and mood.

4. The rating criteria reasonably describe the level of severity and symptomatology of the Veteran's PTSD.

5. The Veteran experiences prostrating headache attacks more than once monthly, which are not productive of severe economic inadaptability. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to a higher initial rating for PTSD, rated 30 percent disabling from January 23, 2007 to July 29, 2009, 50 percent disabling from July 30, 2009 to July 17, 2013, and 70 percent disabling from July 18, 2013, are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1-4.10, 4.130, Diagnostic Code (DC) 9411 (2015). 

2. The criteria for entitlement to an initial 30 percent rating for headaches are met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1-4.10, 4.124a, DC 8100 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Veterans Claims Assistance Act (VCAA)

Upon receipt of a complete or substantially complete application for benefits, VA is tasked with satisfying certain procedural requirements outlined in the VCAA and its implementing regulations. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Specifically, VA must notify a claimant and his representative, if any, of the information and medical or lay evidence not of record that is necessary to substantiate the claim, the portion of the evidence the claimant is to provide on his own behalf, and the portion of the evidence VA will attempt to obtain on the claimant's behalf. 38 U.S.C.A. § 5103. As well, VA must assist a claimant in obtaining evidence necessary to substantiate a claim, including, in certain cases, by affording him a medical examination and/or obtaining a medical opinion. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b), (c).

The Veteran in this case does not assert that VA violated its duty to notify or that there are any outstanding records that VA should obtain on his behalf. After being afforded one examination in support of this appeal, his representative requested another. Since then, the Veteran has not alleged that that examination was inadequate. No further notice or assistance is thus required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (explaining that claimant has the burden of proof of showing there has been an error in developing his claim, but also beyond that, showing it is unduly prejudicial, meaning outcome determinative of his claim, i.e., more than harmless). 

II. Analysis

The Veteran seeks higher initial ratings for his PTSD and headaches. According to written statements he and his representative submitted in November 2008, May 2009, November 2009 and October 2010, due to his PTSD, he experiences social withdrawal and isolation, which affect his relationships with his family members (PTSD has alienated him from his loved ones and is ruining his marriage), including his spouse and children, severe mood swings, disturbances in motivation, impaired judgment and abstract thinking, difficulty following verbal commands, memory deficits, sleep deprivation with nightmares, anger, irritability, a startle response, intrusive thoughts, avoidance, hypervigilance, numbness, diminished interest, detachment, estrangement and flashbacks. 

Allegedly, he has lost his creativity, forgets where he is driving, doesn't remember major childhood moments, also forgets his own children's special dates, is forced to write "to do" lists to ensure tasks get done, has impaired impulse control, difficulty adapting to stressful circumstances and establishing and maintaining relationships, and panic attacks. The Veteran, who has three young children, becomes easily stressed out while caring for them, sitting in traffic or running late for appointments, yells at friends and family for no reason, has been told he no longer shows emotion or thinks clearly and logically, thrashes in his sleep and wakes up disoriented, and is highly suspicious of everyone. 

He alleges that he experiences headaches daily with symptoms of a depressed mood, anxiety, suspiciousness, panic attacks, chronic sleep impairment (headaches interfere with him sleeping) and memory loss. According to his representative, the Veteran has active and inactive headache periods, the latter when his condition improves, and the first examination, dated August 2009, was conducted during an inactive period. 

In November 2008, the Veteran's spouse submitted a written statement confirming the Veteran's assertions and reported symptoms, particularly anger, irritability, extreme mood swings and suspiciousness, and indicating that the Veteran is no longer the fun-loving, outgoing person she fell in love with 7 years ago, but rather a non-communicative man devoid of emotion and lacking in motivation. 

Disability ratings are determined by evaluating the extent to which a claimant's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.10 (2015). If two ratings are potentially applicable, the higher rating is to be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). 

Where, as here, an award of service connection for a disability has been granted and the assignment of an initial rating for that disability is disputed, separate ratings may be assigned for separate periods of time based on the facts found. In other words, the ratings may be "staged." Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). 

A disability may require re-evaluation in accordance with changes in a veteran's condition. In determining the level of current impairment, it is thus essential that the disability be considered in the context of the entire recorded history. 38 C.F.R. § 4.1.

A. Schedular

1. PTSD

The RO has rated the Veteran's PTSD as 30 percent disabling from January 23, 2007 to July 29, 2009, as 50 percent disabling from July 30, 2009 to July 17, 2013, and as 70 percent disabling from July 18, 2013, under DC 9411, according to the General Rating Formula for Mental Disorders (formula). Under this formula, a 30 percent rating is assignable when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is assignable when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: a flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, DC 9411 (2015).

A 70 percent rating is assignable when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships. Id.

A 100 percent rating is assignable when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name. Id. 

During a VA examination conducted in July 2009, the Veteran reported that he had been receiving counseling for two months. In June 2013 in response to that report, the Board remanded these claims to the AOJ, in part, for the purpose of obtaining records of the treatment. The AOJ sought to comply by seeking the Veteran's authorization to obtain such records, but the Veteran did not respond. Wood v. Derwinski, 1 Vet. App. 190 (1991) (duty to assist not a one-way street, requiring cooperation of a claimant). As the claims file stands, the medical evidence is scant, consisting solely of reports of three VA examinations. 

According to these reports, and contrary to the Veteran's assertions, his PTSD disability picture more nearly approximates the criteria for the initial 30, 50 and 70 percent ratings the AOJ assigned. 

a. From January 23, 2007 to July 29, 2009

During this time period, the Veteran's PTSD caused minimal to no occupational impairment. The Veteran was working as a firefighter and reported that he had no difficulties with this job. He also reported working part time in construction with no difficulties. He indicated that, on one occasion, he was blamed for misplacement of supplies, but he was without fault and the supplies were later found. This incident made him realize he held grudges more than he did when he was younger. The Veteran characterized himself as intelligent and wanting to pursue greater education, but lacking in motivation to do so. 

His PTSD caused social impairment as he reported having gone from outgoing to an extremely angry and easily irritated person. He further reported that his intrusive thoughts of Iraq were becoming overwhelming, resulting in him choosing to withdraw, stay by himself and not discuss his war experience, including with his spouse. 

The examiner confirmed that the Veteran was using numbness and avoidance of certain activities, places and people as coping mechanisms. The examiner also noted the Veteran was experiencing marked diminished interest in significant activities he once enjoyed, had strong feelings of detachment and estrangement from others, and had difficulty expressing warm feelings to extended members of his family. The examiner attributed this to multiple PTSD symptoms, including sleeping difficulties, arousal symptoms, irritability, anger outbursts, hypervigilance and an exaggerated startle response. He assigned those symptoms a Global Assessment of Functioning (GAF) score of 64, which is indicative of mild impairment. See Board-adopted Diagnostic and Statistical Manual of Mental Disorders, 5th ed., American Psychiatric Association (DSM-V) (2013) (GAF scores of 61-70 reflect mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. temporarily falling behind in schoolwork)).

For the time period extending from January 23, 2007 to July 29, 2009, the degree of impairment the Veteran and his spouse described conflicted with that which the VA examiner described. The AOJ must have recognized this and accorded the Veteran's and his spouse's reports greater weight as it assigned the Veteran a 30 percent rating, rather than a 10 percent rating, which is to be assigned based on mild PTSD symptomatology. This schedular rating, assigned when there is minimal occupational impairment with an occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks, is appropriate. During this time period, the Veteran's PTSD was becoming overwhelming, but had not yet necessitated treatment or caused any occupational impairment. 

b. From July 30, 2009 to July 17, 2013

The Veteran underwent his second PTSD examination on July 30, 2009, at which time it was evident his PTSD had worsened. He had been receiving private counseling once weekly for the past two months and couple's therapy once weekly for a year. He was still working as a firefighter, but said he had missed as much as two months of work due to counseling sessions and stress. He had lost his part-time construction job six months prior to the examination reportedly because he got into a disagreement with some co-workers over political issues involving the Iraq War. His reported a rocky marriage and indicated he and his spouse were discussing divorce. He also reported that he has lost approximately half of his friends due to his tendency to be distant and depressed.

The examiner noted that the Veteran had a dramatically flat affect and depressed mood and, although cooperative, he was not very communicative during the interview. He had diminished eye contact and somewhat diminished rate and flow of speech. The Veteran reported short-term memory loss, panic attacks twice weekly, sleeping difficulties, an increased level of aggression, communication difficulties, a high level of irritability, hypersensitivity to loud noises, a tendency to check doors and windows, social isolation and quite significant emotional numbing. The examiner characterized the Veteran's PTSD as moderately severe and assigned that disability a GAF score of 50, which is indicative of serious symptoms. See DSM-V (GAF scores of 41-50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job)).

For the time period extending from July 30, 2009 to July 17, 2013, the Veteran's PTSD caused occupational and social impairment with reduced reliability and productivity, impairment warranting the 50 percent rating the AOJ assigned. The Veteran was still working, albeit with some difficulty, and coping with his PTSD symptoms and spousal relationship by attending counseling. He was still able to care for his children and was not noted to have judgment or thinking deficits. A schedular rating in excess of 50 percent is therefore not assignable during the period in question. 

c. Since July 18, 2013

The Veteran underwent his third PTSD examination on July 18, 2013, at which time it was again evident his PTSD had worsened, but only with regard to social functioning. He was still working and reportedly performing well. He was missing work less frequently due to drinking the night before. He was experiencing anger there, but others helped him contain it. 

He had stopped participating in counseling and was experiencing a decline in his marriage; he stayed with friends more often than not, returning home once or twice weekly, only to become involved in arguments with his spouse. 

According to the VA examiner, the Veteran's PTSD was severe and causing occupational and social impairment with deficiencies in most areas such as work, family relations, judgment, thinking and mood. PTSD of this severity warrants a 70 percent schedular rating, which the AOJ assigned. 

There is no indication that, since July 18, 2013, the Veteran's PTSD has caused total social and occupational impairment. Although the Veteran has difficulty establishing and maintaining effective relationships at work and at home, he is still working and reports having friends, with whom he is staying. As such, a schedular rating in excess of 70 percent is not assignable for this time period. 

2. Headaches

The RO has rated the Veteran's headaches as 10 percent disabling under DC 8100, based on characteristic prostrating attacks occurring on an average of once every two months over the last several months. 38 C.F.R. § 4.124a, DC 8100 (2015). To warrant a higher 30 percent rating, the evidence must establish that the Veteran has the same type of headaches occurring on an average of once monthly over the last several months. Id. 

Indeed the evidence reflects headaches of this severity. During the July 2013 VA neurological examination, an examiner specifically characterized the Veteran's headaches as prostrating and indicated that they occurred more frequently than once monthly. He also found that these headaches had improved slightly since the last examination, conducted in August 2007. These findings dictate assigning the headaches a 30 percent rating to cover the entire appeal period, from 2007, when the headaches were slightly worse. 

To be assigned the next higher rating of 50 percent, the evidence must show that the headaches are very frequent, completely prostrating and prolonged and productive of severe economic inadaptability. 38 C.F.R. § 4.124a, DC 8100 (2015). Here, the Veteran does not claim that his headaches are this severe, nor does the evidence show that this is the case. Although the July 2013 VA examiner found that the headaches occurred more than once monthly, there is no indication that they occur very frequently and, even if such is the case, they have never been described as prolonged or interfering with the Veteran's job. In fact, the Veteran attributes his job difficulties to PTSD and almost all of the symptoms he reports as being associated with his headaches are symptoms the AOJ considered in assigning the Veteran various ratings for his PTSD. Considering the same symptoms as part of his headaches in support of this claim would amount to pyramiding. 38 C.F.R. 
§ 4.14. (2015). 

As previously noted, under 38 C.F.R. § 4.7, if two ratings are potentially applicable, the higher rating is to be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. Here, one might argue that, with regard to the frequency of the Veteran's headaches, both ratings are potentially applicable. However, with regard to the severity of such headaches, the 50 percent rating is not applicable. Inasmuch as the Veteran experiences prostrating headache attacks more than once monthly, which are not prolonged and productive of severe economic inadaptability, an initial rating in excess or 30 percent is not assignable. 

B. Extraschedular

In certain circumstances, the Board may assign an increased/higher initial rating on an extraschedular basis, but not in the first instance. When the question is raised either by the claimant, or reasonably by the evidence of record, the adjudicator must specifically decide whether to refer the claim to the Chief Benefits Director of VA's Compensation and Pension Service under 38 C.F.R. § 3.321 for consideration of the matter. Barringer v. Peake, 22 Vet. App. 242 (2008). The Director is authorized to approve the assignment of an extraschedular rating if the claim "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. 
§ 3.321(b)(1) (2015).

If the claimant or the evidence raises the question of entitlement to an increased/higher rating on an extraschedular basis, as a threshold matter, the Board must determine whether the evidence before VA presents such an exceptional disability picture that the available schedular rating for the service-connected disability is inadequate. This requires comparing the level of severity and symptomatology of the service-connected disability with the established criteria found in the rating schedule pertaining to that disability. Thun v. Peake, 22 Vet. App. 111, 118 (2008). If the criteria reasonably describe the level of severity and symptomatology of the disability, the disability picture is contemplated by the rating schedule, the assigned schedular rating is adequate and no referral is necessary. Id. If the criteria do not reasonably describe the level of severity and symptomatology of the disability, the disability picture is not contemplated by the rating schedule and the assigned schedular rating is inadequate. The RO or Board must then determine whether the exceptional disability picture involves other related factors such as those outlined in 38 C.F.R. 3.321(b)(1) as "governing norms", including "marked interference with employment" and "frequent periods of hospitalization". Id.

Here, the Veteran has not raised the question of whether he is entitled to a higher initial rating for his headaches on an extraschedular basis. He has, however, mentioned that his PTSD interferes with his occupational functioning, thereby raising this question with regard to his PTSD claim. Referral for extraschedular consideration is not, however, necessary. The rating criteria adequately describe the level of severity and symptomatology of the Veteran's PTSD. The ratings assigned this disability not only contemplate the nature of the Veteran's PTSD symptomatology, but also contemplate how the symptomatology affects the Veteran's ability to function occupationally and socially.

C. Conclusion

The rating schedule is designed to accommodate changes in condition; therefore, the Veteran may be awarded different ratings in the future should either of his disability pictures change. See 38 C.F.R. § 4.1. At present, however, the previously noted ratings are the most appropriate given the evidence of record. 


ORDER

A higher initial rating for PTSD, rated 30 percent disabling from January 23, 2007 to July 29, 2009, 50 percent disabling from July 30, 2009 to July 17, 2013, and 70 percent disabling from July 18, 2013, is denied. 

An initial 30 percent rating for headaches is granted.


____________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs