Citation Nr: 1719259 
Decision Date: 05/10/17 Archive Date: 06/06/17

DOCKET NO. 16-34 692 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUE

Entitlement to a rating in excess of 30 percent for service-connected posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

L. Leifert, Associate Counsel



INTRODUCTION

The Veteran served on active duty from January 1943 to December 1945.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a May 2015 rating decision by the Detroit, Michigan, Regional Office (RO) of the Department of Veterans Affairs (VA), which continued a rating of 30 percent for PTSD. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

From March 2014, the date of the Veteran's claim for an increased rating, the symptoms and overall impairment from his PTSD have more nearly approximated occupational and social impairment with reduced reliability and productivity, but have not more nearly approximated occupational and social impairment with deficiencies in most areas. 


CONCLUSION OF LAW

The criteria for a rating of 50 percent, but no higher, for PTSD, have been met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411 (2016).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2014 and Supp. 2015), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2016), provides that VA will assist a claimant in obtaining evidence necessary to substantiate a claim. They also require VA to notify the claimant and the claimant's representative of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. In this case, VA provided adequate notifications about the information and evidence necessary to substantiate the claim in a March 2014 letter. 

VA's duty to assist the Veteran in the development of his claim includes assisting him in the procurement of service treatment records (STRs) and pertinent treatment records, and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The RO appropriately assisted the Veteran in obtaining indicated treatment and evaluation records. 

VA provided adequate medical examinations and opinions for the Veteran's claim adjudicated herein. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In September 2014 and July 2016 the Veteran was afforded VA examinations for his psychiatric disorder. As indicated by the discussion below, these examination reports include responsive medical opinions and clinical findings and are therefore adequate to decide the claim. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (once VA undertakes the effort to provide an examination, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided). 

Accordingly, the duty-to-assist requirements under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c) are satisfied.


II. Analysis

Disability evaluations are determined by the application of rating criteria set forth in the VA Schedule for Rating Disabilities (38 C.F.R. Part 4) based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155.

In evaluating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10.

The Veteran's entire history is reviewed when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Where entitlement to compensation has already been established, VA must address the evidence concerning the state of the disability from the time period one year before the claim for an increase was filed until VA makes a final decision on the claim. The United States Court of Appeals for Veterans Claims (Court) has held that consideration of the appropriateness of a staged rating is required. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7. In view of the number of atypical instances, it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign a rating based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). When evaluating the level of disability from a mental disorder, VA will also consider the extent of social impairment, but shall not assign a rating solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran is currently rated as 30 percent disabling under 38 C.F.R. § 4.130, DC 9411. 

Under the General Rating Formula, a 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

A 50 percent disability rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, DC 9411.

A 70 percent disability rating is warranted when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances ( including work or a work like setting); and inability to establish and maintain effective relationships. Id.

A 100 percent disability rating is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. On the other hand, if the evidence shows that the Veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate equivalent rating will be assigned. Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004); Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). 

The Veteran has never received treatment for his PTSD.

A September 2014 VA examination report reflects that the Veteran lived with his wife of 71 years as well as their 62-year-old son. The Veteran reported that he got along well with others, and that he had friends but that most of them had passed away. He stated that he did not socialize, and that after he returned from the war he became an introvert and a loner. He was "quite bothered" by his war memories every other day. He stated that whenever he thought or talked about it, his stomach churned. He endorsed wartime nightmares every two to three weeks, and reliving the war "every once in a great while." He reported being on guard and alert, and that he was more easily frightened and startled of late. He stated that he got out a couple of times per week and made quick trips so as not to be exposed to a lot of people. He endorsed some depression at least once a week; but denied panic attacks, sleep problems, or memory, concentration, or attention impairment. The examiner noted that the Veteran seemed to be minimizing his symptoms, which was a common trait in people with chronic PTSD. The examiner found that the Veteran exhibited symptoms of depressed mood and flattened affect, and had occasional decrease in work efficiency.

A July 2016 VA examination report documents that the Veteran was still living with his wife and son, and that he got along well with them. He stated that he and his wife watched television, ate, and tried to clean the house, but that they did not go out much because the Veteran had a stroke and vertigo, and did not move much. He reported that most of his friends were dead, and his wife stated that their neighbors were friendly. The Veteran indicated that he slept eight to ten hours per night, and took two to three hour naps, but that he did not have any energy and was tired all the time. He endorsed wartime nightmares once a month, and stated that he became an introvert after the war. The Veteran and his wife reported that he was nervous around people, and did not like being in a crowd. The examiner noted that he exhibited symptoms of anxiety and difficulty establishing and maintaining effective work and social relationships. However, the Veteran did not demonstrate any impairment of thought process or communication, delusions or hallucinations, or suicidal or homicidal ideation. He endorsed a good history of minimal personal hygiene; was oriented to time, person, and place; and denied any significant memory loss or impairment, obsessive or ritualistic behaviors, panic attacks, and impaired impulse control. The examiner concluded that the Veteran had primarily mild and stable symptoms of PTSD.

Upon review of the evidence of record, the Board finds that a disability rating of 50 percent, but no higher, is warranted.

In this case, the evidence shows that the Veteran experienced wartime nightmares every two to three weeks, that he was an introvert, and that while he had friends most of them had passed away. Further, the record reflects that the Veteran did not like being in crowds, experienced some depression at least once a week, and became anxious whenever he thought or talked about his wartime experiences. The September 2014 and July 2016 VA examiners found that the Veteran exhibited symptoms of depression, flattened affect, anxiety, and difficulty establishing and maintaining effective relationships. These findings reflect that the symptoms and overall impairment caused by the Veteran's PTSD more nearly approximates the criteria for a 50 percent rating. This is particularly true in light of the fact that the September 2014 VA examiner indicated that the Veteran seemed to be minimizing his symptoms.

The symptoms and overall impairment did not, however, more nearly approximate the criteria for a rating of 70 percent or higher. The Veteran got along well with his wife and son; and denied panic attacks, suicidal or homicidal ideations, and memory problems. The September 2014 and July 2016 VA examiners also noted that the Veteran had normal thought process and impulse control, good personal hygiene, was oriented to time and place and had normal speech. In addition, the July 2016 VA examiner found that the Veteran's PTSD was stable and of mild severity. However, an examiner's characterization of the level of disability is not binding on the Board. 38 C.F.R. § 4.2 ("It is the responsibility of the rating specialist to interpret reports of examination ... so that the current rating may accurately reflect the elements of disability present"); VA Adjudication Procedures Manual, M21-1, Part III, Subpart. iv, Chapter 3, Section A.7.i (updated Oct. 28, 2015) ("Do not request a medical authority to make conclusions of law, which is a responsibility inherent to the rating activity"). The above evidence reflects that while the symptoms and overall impairment approximated the criteria for a 50 percent rating, the Veteran did not have the required "sufficient symptoms of the kind listed in the 70 percent requirements, or others of similar severity, frequency or duration, that cause occupational and social impairment with deficiencies in most areas such as those enumerated in the regulation." Vazquez-Claudio, 713 F.3d at 118.

The Board must also determine whether the schedular evaluation is inadequate, thus requiring that the AOJ refer the claim for consideration of "an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1) (2016). Consideration of referral for an extraschedular rating requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating criteria adequately contemplate the Veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms, i.e., marked interference with employment or frequent hospitalization. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service to determine whether an extraschedular rating is warranted.

Here, the Board finds that the Veteran's disability picture is contemplated by the rating schedule. The Veteran claims to experience anxiety, depression, difficulty in establishing and maintaining effective relationships, and nightmares. These symptoms are all explicitly considered in the rating schedule. Moreover, as indicated by the cases cited above, the criteria in the general rating formula for mental disorders include both the symptoms listed as symptoms "such as" those listed, along with the overall impairment caused by these symptoms. This broad language in the criteria thus contemplates all of the symptoms even though they are not specifically listed. Thus, the Board finds that at no time has the disorder under consideration been shown to be so exceptional or unusual as to warrant the assignment of any higher rating on an extraschedular basis. See 38 C.F.R. § 3.321(b)(1).

The Board also notes that a claim for entitlement to a total disability rating based on individual unemployability (TDIU) due the Veteran's service-connected psychiatric disorder cannot be inferred, inasmuch as there is no suggestion in the record or by the Veteran that he is unemployable due to his service-connected disability. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). The evidence shows that the Veteran retired in the late 1970s-1980s, but that he got along well with his co-workers and did not have any work problems due to this service-connected PTSD. As such, the Veteran has not contended, and the evidence does not show, that his psychiatric symptoms prevent him from being gainfully employed. 

For the foregoing reasons, a rating of 50 percent is warranted for the Veteran's PTSD. As the preponderance of the evidence is against any higher rating, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 4.3.


ORDER

Entitlement to a rating of 50 percent, but no higher, for service-connected PTSD is granted, subject to controlling regulations governing the payment of monetary awards.



____________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs