Citation Nr: 1722241 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 08-29 437 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for gastroesophageal reflux disorder (GERD).

2. Entitlement to service connection for arthritis of multiple unspecified joints, to include as secondary to a service-connected left knee disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. Bayles, Associate Counsel



INTRODUCTION

The appellant is a Veteran who served on active duty from June 1973 to November 1976. This matter is before the Board of Veterans' Appeals (Board) on appeal of an August 2005 rating decision by the Montgomery, Alabama Department of Veterans Affairs (VA) Regional Office (RO), that in pertinent part granted service connection for GERD, rated 10 percent, effective April 15, 2004. In June 2011, the Veteran was scheduled for a hearing before a Decision Review Office (DRO) at the RO; thereafter, he withdrew the request. In June 2012 and August 2015 these matters were before the Board, when they were remanded (by a Veterans Law Judge other than the undersigned; the case is now assigned to the undersigned) for additional development and adjudicative action. 

[The matter of service connection for a psychiatric disability had also been on appeal before the Board. A May 2016 rating decision granted service connection for PTSD, resolving that issue.] 

The issue of service connection for arthritis of multiple unspecified joints, to include as secondary to a service-connected left knee disability, is being REMANDED to the Agency of Original Jurisdiction (AOJ). The Veteran will be notified if further action is required.


FINDING OF FACT

At no time under consideration is the Veteran's GERD shown to have been manifested by persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health.





CONCLUSION OF LAW

A rating in excess of 10 percent for GERD is not warranted. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321(b)(1), 4.1, 4.20, 4.21, 4.114, Diagnostic Code (Code) 7346 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). As this appeal is from the rating decision that granted service connection for GERD and assigned a disability rating and effective date for the award, statutory notice had served its purpose, and its application was no longer necessary. A statement of the case (SOC) provided notice regarding entitlement to an increased initial rating. 

The Veteran's pertinent private and VA medical records have been obtained. The Veteran was afforded VA examinations for GERD in July 2010 and (pursuant to the August 2015 remand) in December 2015. The Board finds the examinations are cumulatively adequate for rating purposes as the reports reflect the providers' familiarity with the Veteran's medical history, the examiner elicited form the Veteran a description of his symptoms and their frequency, severity, and impact, and noted the findings necessary for proper consideration of this matter. See Barr v. Nicholson, 21 Vet. App. 303 (2007) (VA must provide an examination that is adequate for rating purposes). The Veteran has not identified any relevant evidence that remains outstanding. VA's duty to assist is met. 

Factual Background, Legal Criteria, and Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

The rating schedule does not provide a specific code for GERD; the rating assigned is by analogy to the criteria for rating hiatal hernia. 38 C.F.R. § 4.20. On review of those criteria, the Board finds the analogy appropriate, as the symptoms and impairment associated with GERD most approximately resemble the symptoms and impairment in the criteria for rating hiatal hernia (under Code 7346). 

Under Code 7346, a 30 percent rating is warranted when there is persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. With two or more of the symptoms for the 30 percent evaluation of lesser severity, a 10 percent rating is warranted. 38 C.F.R. § 4.114.

The Veteran's entire history is to be considered when making disability evaluations determinations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). When the appeal is from the initial rating assigned with a grant of service connection, the severity of the disability during the entire period from the grant of service connection to the present is to be considered. "Staged" ratings may be assigned for distinct periods when different levels of impairment are shown. Fenderson v. West, 12 Vet. App. 119 (1999).

The use of terminology such as severe by VA examiners and others, although an element to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue, including degree of disability, shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Board notes that it has reviewed all of the evidence in the record with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claim. 

On February 2005 VA examination, the Veteran reported that he began having acid reflux and nausea when he was started on Naprosyn in 1994. He reported he took non-steroidal anti-inflammatory drugs (NSAIDS) for severe knee pain. His symptoms were reported as intermittent with remissions. He took 40 mg of pantoprazole daily. There was no history of hospitalization or surgery and there were no periods of incapacitation due to stomach or duodenal disease. He reported episodes of abdominal colic, nausea, or vomiting and abdominal distention occurring less than monthly, lasting one day with moderate severity. He reported heartburn with gnawing or burning pain occurring monthly before eating, lasting between one and two hours, located in the epigastric region, and relieved by antacids. He reported episodes of hematemesis or melena, which were described as hemorrhoids which bled. On physical examination, there were no signs of anemia, significant weight loss, or malnutrition. The diagnosis was GERD. The examiner opined that the GERD did not affect the Veteran's daily activities. The examiner opined that it was at least as likely as not that the Veteran's stomach condition was related to therapy prescribed for arthritis, and explained that gastrointestinal irritation is a common side effect of NSAID therapy which the Veteran had received since 1994. 

In his February 2006 notice of disagreement (NOD) the Veteran noted that he continued to take medication for GERD but still had reflux. He took 40 mg of pantoprazole twice a day. 

In his September 2008 substantive appeal the Veteran stated that he had been taking medication for GERD since 1993, not 1994. He stopped taking that medication in 1996 because his stomach had been upset throughout the two years he took it. He felt that his stomach had been upset until his doctor changed his medication in 1996. He indicated that any other medications he took did not resolve the GERD because he was already "too far gone" from taking the other medication in 1993, and the inner lining of his stomach was deteriorated. 

September 2008 vocational rehabilitation notes indicate the Veteran reported chronic problems with GERD. On December 2008 VA treatment, he reported occasional problems with GERD. On December 2009 VA treatment, he reported that his GERD was doing well. On July 2010 VA treatment, he reported he was continuing to have GERD symptoms. 

On July 2010 VA examination, the Veteran reported that he took liquid antacids after each meal and his "food don't digest right." He experienced near daily indigestion, and complained of early morning constipation due to decreased digestion. The course since onset was noted as progressively worse. He took extra strength Maalox four times per day and 40 mg of pantoprazole daily. There was no history of hospitalization, surgery, or trauma related to the esophagus. He reported nausea several times per week. He reported vomiting weekly. He reported no dysphagia or esophageal distress. He reported heartburn several times per week. He reported weekly regurgitation of undigested food. There was no history of hematemesis, melena, or esophageal dilation. On physical examination overall health was good. There were no signs of anemia, weight loss, or malnutrition. GERD was diagnosed; the impact on occupational activities was noted to be decreased concentration and frequent breaks to take antacids. The examiner noted that the impact on daily activities was mild for sports, recreation, bathing, dressing, and grooming, moderate for shopping and chores, and severe for exercise, traveling, and toileting. 

On January 2013 VA treatment, the Veteran reported some problems with GERD.

On December 2015 VA examination (pursuant to the Board's August 2015 remand), the Veteran reported that the medication prescribed for his reflux was not helping. He had obtained Nexium from a local pharmacy at his own expense. The Nexium helped more than the pantoprazole. He reported that the reflux was worsening. On occasion he had difficulty sleeping, became nauseated, and had dry heaves. He reported persistently recurrent epigastric distress, pyrosis, reflux, regurgitation, and sleep disturbance caused by esophageal reflux. The frequency of symptom recurrence per year was four or more times. The average duration of symptoms was less than one day. He reported four or more episodes of nausea per year with an average duration of less than one day. Impairment of health, esophageal stricture, spasm of esophagus, and acquired diverticulum of the esophagus were not noted. The examiner noted previous diagnoses of GERD and hiatal hernia in 2003, and opined that the Veteran's current esophageal condition may likely moderately impact physical and sedentary labor during periods of exacerbation resulting in pain, decreased concentration and fatigue.

VA and private treatment records through February 2016 show symptoms similar in nature and severity to those found on the VA examinations described above.

While the record reflects periods of waxing and waning of the Veteran's GERD. However, at no time during the evaluation period is the GERD shown to have been manifested by symptoms that satisfy the above-listed criteria for a 30 percent rating. Notably, the criteria for a 30 percent rating in Code 7346 are stated in the conjunctive and must all be met to warrant such rating. Substernal or arm or shoulder pain has never been reported. On 2005 VA examination the Veteran reported that symptoms occurred less than monthly, and lasted only one day. There were no signs of anemia, significant weight loss, or malnutrition. Between September 2008 and July 2010 the Veteran variously reported: chronic problems with GERD (September 2008); occasional problems with GERD (December 2008); that GERD was doing well (December 2009); and continuing GERD symptoms (July 2010). On July 2010 VA examination it was noted that the Veteran's overall health was good; there were no signs of anemia, weight loss, or malnutrition. On December 2015 examination it was noted that GERD symptoms occurred 4 or more times a year and lasted a day. The examiner opined that the GERD would have a moderate impact on physical and sedentary labor during periods of exacerbation from pain, decreased concentration, and fatigue. Such symptoms, findings, and related impairment do not by their frequency, duration, and severity reflect persistently recurrent epigastric distress productive of considerable (which is defined as large in extent) impairment of health. Notably, the Veteran has never been described as anemic, malnourished, losing significant weight, or in poor health. 

The Board has no reason to question the Veteran's accounts of continuing problems with GERD (or that they cause discomfort and functional impairment). However, the disability picture presented by his GERD throughout is one of 2 or more of the symptoms for a 30 percent rating, of lesser severity, consistent with the 10 percent rating that has been assigned. The criteria for a 30 percent rating are not met or approximated, and such rating is not warranted.

There is no evidence or allegation of symptoms or impairment not encompassed by the schedular criteria, so as to render those criteria inadequate, and warrant referral for consideration of an extraschedular rating under 38 C.F.R. § 3.321. See Thun v. Peake, 22 Vet. App. 111 (2008). 

From June 2014 the Veteran's combined rating for service connected disabilities has been 100 percent. It is neither alleged, nor suggested by the record, that his GERD renders hi unemployable, and the matter of entitlement to a total disability rating based on individual unemployability due to service-connected disability is not raised by the record in the context of the instant claim for increase. There is nothing in the record to suggest that. The Veteran's combined service-connected ratings are 100 percent from June 23, 2014. 

ORDER

A rating in excess of 10 percent for GERD is denied.


REMAND

The Board finds that further development of the record is necessary to comply with
VA's duty to assist the Veteran in the development of facts pertinent to his claim of service connection for arthritis of multiple unspecified joints, to include as secondary to a service-connected left knee disability. . 

The August 2015 Board remand directed the AOJ to send the Veteran a letter asking him to identify the joints with arthritis he seeks to have service connected (i.e., adequately identify the disability for which service connection is sought) and to provide authorizations for VA to secure any pertinent records from the State of Alabama Disability Board. The AMC requested the authorizations in a letter dated in November 2015. The Veteran has not responded. On close review of the record the Board did not find anything suggesting that the Veteran was sent a letter asking him to identify the specific arthritic joints for which service connection is sought. There has not been substantial compliance with the August 2015 remand instructions, and corrective action is necessary. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

Accordingly, the case is REMANDED for the following:

1. The AOJ should send the Veteran a letter asking him to specify the joints with arthritis he for which he seeks to establish service connection. He should be afforded ample opportunity to respond. 

2. The AOJ should then review the record; arrange for any further development suggested by his response; and readjudicate the claim. If it remains denied, the AOJ should issue an appropriate supplemental SOC, afford the Veteran and his representative opportunity to respond, and return the case to the Board. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs