﻿Citation Nr: 18115440
Decision Date: 07/03/18 Archive Date: 07/02/18

DOCKET NO. 13-12 310
DATE: July 3, 2018
ORDER
The February 1, 2018 Board decision is vacated.
Prior to May 26, 2009, an initial rating in excess of 10 percent for panic disorder with agoraphobia is denied. 
From May 26, 2009 to March 8, 2011, a rating in excess of 30 percent for panic disorder with agoraphobia is denied. 
From March 9, 2011 to February 15, 2017, a rating in excess of 50 percent for panic disorder with agoraphobia is denied. 
From February 16, 2017, a rating of 70 percent for panic disorder with agoraphobia is granted, subject to the laws and regulations governing the award of monetary benefits.
From February 16, 2017, a total disability rating based on individual unemployability (TDIU) is granted, subject to the laws and regulations governing the award of monetary benefits.
Prior to February 16, 2017, entitlement to referral of a TDIU for extraschedular consideration is granted.
REMANDED
Entitlement to a TDIU for the period prior to February 16, 2017 is remanded.
FINDINGS OF FACT
1. The February 1, 2018 Board decision was decided without consideration of material evidence which appears to support the Veteran, which constitutes a denial of due process in adjudication of his appeal.
2. Prior to May 26, 2009, the Veteran’s panic disorder was not shown to cause occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks.
3. From May 26, 2009 to March 8, 2011, the Veteran’s panic disorder was not shown to cause occupational and social impairment with reduced reliability and productivity.
4. From March 9, 2011 to February 15, 2017, the Veteran’s panic disorder was not shown to cause occupational and social impairment with deficiencies in most areas.
5. From February 16, 2017, the Veteran’s panic disorder was manifested by symptoms that approximate occupational and social impairment with deficiencies in most areas.
6. From February 16, 2017, the Veteran was precluded from engaging in substantially gainful employment due to his service-connected disabilities. 
CONCLUSIONS OF LAW
1. The criteria for vacatur of the February 1, 2018 Board decision have been met. 38 U.S.C. §§ 7103(c), 7104(a) (2012); 38 C.F.R. § 20.904 (2017).
2. Prior to May 26, 2009, the criteria for an initial rating in excess of 10 percent for panic disorder have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.125, 4.126, 4.130, Diagnostic Code 9412 (2017).
3. From May 26, 2009 to March 8, 2011, the criteria for a rating in excess of 30 percent for panic disorder have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.125, 4.126, 4.130, Diagnostic Code 9412 (2017).
4. From March 9, 2011 to February 15, 2017, the criteria for a rating in excess of 50 percent for panic disorder have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.125, 4.126, 4.130, Diagnostic Code 9412 (2017).
5. From February 16, 2017, the criteria for a rating of 70 percent, but no higher, for panic disorder not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.125, 4.126, 4.130, Diagnostic Code 9412 (2017).
6. From February 16, 2017, the criteria for TDIU have been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.151, 3.155, 3.157, 3.340, 3.341, 3.400, 4.16 (2017).
7. Prior to February 16, 2017, the criteria for referral of TDIU for extraschedular consideration have been met. 38 U.S.C. §§ 1155 (2012); 38 C.F.R. § 4.16(b) (2017).

VACATUR
The Veteran served on active duty from August 1963 to August 1966.
This matter is on appeal from a November 2010 rating decision.
In February 2018, the Board issued a decision on this appeal. For the reasons discussed immediately below, the February 2018 Board decision is vacated. 
The Board may vacate an appellate decision at any time upon request of the appellant or his or her representative, or on the Board’s own motion, when an appellant has been denied due process of law or when benefits were allowed based on false or fraudulent evidence. 38 U.S.C. § 7104(a) (2012); 38 C.F.R. § 20.904 (2017).
A review of the record reflects a June 2016 statement submitted by the Veteran and a February 2017 medical opinion which were not mentioned in the Board’s adjudication of the appeal. Thus, the Board’s denial of the increased rating for psychiatric disability issued without acknowledgment of the relevant evidence was a denial of due process. 
Accordingly, the February 1, 2018 Board decision is vacated.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
At the outset, the Board notes the argument raised by the appellant’s Motion for Reconsideration that the Board did not mention the lay statement dated June 7, 2016, and a letter from the Veteran’s treating psychiatrist dated February 16, 2017. See Motion for Reconsideration dated February 2018. However, as will be discussed below, the Board observes that lay statements were specifically considered by the VA examiners that evaluated the Veteran during the clinical examinations of record. Notwithstanding, in this decision, the Board will address the medical and lay evidence of record below.
By way of background, the Veteran was granted service connection for panic disorder by rating decision of November 2010 and assigned an initial disability rating of 10 percent, effective January 20, 2004. The RO also assigned a 30 percent evaluation effective May 6, 2004. Thereafter, in May 2013, the RO granted an increased evaluation of 50 percent, effective March 16, 2011. The Veteran disagrees with the assigned evaluations.
The Veteran’s panic disorder with agoraphobia has been rated under Diagnostic Code 9412, which is rated under the General Rating Formula for Mental Disorders. 38 C.F.R. § 38 C.F.R. § 4.130, Diagnostic Code 9412.
Under the General Rating Formula for Mental Disorders, a 10 percent rating is assigned for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication. 38 C.F.R. § 4.130, Diagnostic Code 9412.
A 30 percent evaluation is assigned when a veteran’s mental disability causes occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). Id. 
A 50 percent rating requires occupational and social impairment, but with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete task); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id. 
A 70 percent rating is warranted for even greater occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals that interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id. 
A 100 percent rating is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name. Id.
When rating a mental disorder, VA must consider the frequency, severity, and duration of the Veteran’s psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission. The rating agency must assign a rating based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. When rating the level of disability from a mental disorder, the rating agency must consider the extent of social impairment, but cannot assign a rating solely on the basis of social impairment. 38 C.F.R. § 4.126.
The Veteran’s actual symptomatology, and resulting social and occupational impairment, will be the primary focus when assigning a disability rating for a mental disorder, and the Veteran may qualify for a particular rating by demonstrating the particular symptoms associated with that percentage, or other symptoms of similar severity, frequency, and duration. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013).
Also relevant to the Board’s analysis is the Global Assessment of Functioning (GAF) score assigned to the Veteran, which is a scale that indicates the psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Carpenter v. Brown, 8 Vet. App. 240 (1995); Richard v. Brown, 9 Vet. App. 266 (1996); American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV); 38 C.F.R. § 4.130. While the veteran’s GAF score is not itself determinative of the most appropriate disability rating, the Board must consider it when assigning the appropriate disability rating for the veteran. VAOPGCPREC 10-95 (1995), 60 Fed. Reg. 43186 (1995).
GAF scores ranging from 41 to 50 indicate serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). GAF scores ranging from 51 to 60 indicate moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). GAF scores ranging from 61 to 70 indicate some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994); 38 C.F.R. § 4.130.
Prior to May 26, 2009
VA treatment records of May 2003 through November 2006 document multiple mental status examinations afforded to the Veteran. In October 2003, he was assessed a GAF score of 70 and diagnosed with panic disorder. In May 2004, he was again assessed a GAF score of 70. At a follow-up clinical visit in November 2005, he was assessed with a GAF score of 65 and the psychiatrist noted that the Veteran’s panic disorder was under control with medication. See Fort Wayne VA Medical Center (VAMC) records. 
In view of the above, for the period prior to May 26, 2009, the Board finds that the Veteran is adequately compensated by the assigned 10 percent evaluation. During this period, the Veteran’s GAF scores were generally above 65 with highest assessment of 70, indicating mild symptoms. This represents that he had some difficulty in social and occupational functioning, but generally functioned well. Further, his symptoms were controlled by continuous medication. The record does not establish that the Veteran’s panic disorder was manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks as required for a 30 percent disability rating. 
Therefore, an initial rating in excess of 10 percent prior to May 26, 2009 is not warranted. 
From May 26, 2009 to March 8, 2011
At a May 2009 VA psychiatric examination, the Veteran reported having good relationships with all five adult children, two of whom he visits frequently. He reported living with a woman for the past three years and having “quite a few friends” that he meets weekly. According to the Veteran, his ability to be around groups or large unfamiliar places is very limited causing him to experience increased anxiety to the point of panic. He was diagnosed with panic disorder with agoraphobia and assessed with a GAF score of 60. The examiner noted that the Veteran’s mental disorder symptoms required continuous medication. See VA Examination for Mental Disorders dated May 26, 2009.
At a September 2010 visit with a VA psychiatrist, he was diagnosed with panic disorder with agoraphobia and depressive disorder not otherwise specified. He was assessed a GAF score of 60. See Fort Wayne VAMC records.
During this appeal period, the record does not establish that the Veteran’s panic disorder with agoraphobia results in occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect, circumstantial, circumlocutory, or stereotyped speech, panic attacks more than once a week, difficulty in understanding complex commands, impairment of short and long-term memory, impaired judgment, impaired abstract thinking, disturbances of motivation and mood, or difficulty in establishing and maintaining effective work and social relationships. 
Further, at no time during this period, does the record reflect that the Veteran had difficulty maintaining social relationships. In fact, according to the Veteran, he has “quite a few friends” that come visit him weekly and also maintains good relationships with his daughters and girlfriend. His GAF scores have remained 60, indicating mild to moderate symptoms. 
In short, the Board finds that the Veteran’s symptoms during this period of the appeal do not impact his social and occupational functionality in such a way to result in occupational and social impairment, with reduced reliability and productivity or with deficiencies in most areas. Thus, the evidence does not reflect that the Veteran’s service-connected panic disorder with agoraphobia has been manifested by symptoms of such severity to warrant an evaluation in excess of 30 percent. 
Accordingly, a rating in excess of 30 percent, from May 26, 2009 to March 8, 2011, is not supported and the claim must be denied.
From March 9, 2011 to February 15, 2017
By rating action of May 2013, the RO increased the Veteran’s disability rating for panic disorder with agoraphobia to 50 percent disabling as of March 9, 2011.
In March 2011, the Veteran was afforded a VA psychiatric examination. He reported problems with anxiety and having regular panic attacks. On examination, he was clean, attentive with clear and coherent speech. The examiner indicated the Veteran’s affect was normal but at times angry and verbally loud. The examiner indicated inappropriate behavior. The Veteran specifically denied sleep impairment, hallucinations or obsessive/ritualistic behavior, and homicidal or suicidal thoughts. The examiner noted that the Veteran’s girlfriend drove him to the examination. He was assessed a GAF score of 60. See VA Examination for Mental Disorders dated March 9, 2011.
In April 2013, the Veteran was afforded another VA psychiatric examination. He reported residing with his partner of eight years, whom he gets along well with. He reported maintaining relationships with all five daughters, some who call daily. He also reported having friends that he talks on the phone with, those who visit him and that he goes fishing with. On examination, he was friendly, cooperative with coherent thought. He had depressed mood, anxiety, panic attacks more than once a week, sleep impairment, and difficulty adapting to stressful circumstances. He denied hallucinations, suicidal or homicidal ideation. With regards to his functional level, the examiner indicated “occupational and social impairment with reduced reliability and productivity” and assessed a GAF score of 55. See VA Examination for Mental Disorders dated April 3, 2013.
An April 2014 VA mental disorders examination report indicates an improvement in his assessed functional level. The psychologist found that the Veteran’s panic disorder was manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. See April 9, 2014 Mental Disorders Disability Benefits Questionnaire (DBQ).
In February 2015, the Veteran was seen for a mental impairment questionnaire. The VA psychiatrist noted this as his first time treating the Veteran. On examination, he indicated recurrent panic attacks, persistent irrational fear of activity, and generalized persistent anxiety. He found moderate functional limitations regarding activities of daily living and difficulties in maintaining concentration. The examiner indicated marked difficulties in maintaining social functioning and noted the Veteran’s report of daily panic attacks. The Veteran was assessed a GAF score of 45. See Salem VAMC Mental Impairment Questionnaire dated February 6, 2015.
The record also reflects the Veteran’s lay statement submitted in June 2016 indicating suicidal thoughts which were not reported to his doctors. Specifically, the Veteran states, “…yes suicide has entered my mind, but I never mentioned it to my doctors, as I had friends mention it and they sent them to marion mental hospital. I don’t want that.” See Statement in Support of Claim dated June 7, 2016. 
Upon review of the evidence, the Board finds that the preponderance of the evidence is against a finding of entitlement to an evaluation exceeding 50 percent for this period on appeal. 
As chronicled above, the Veteran clearly experienced psychiatric symptomatology as a result of his panic disorder with symptoms such as depressed mood, difficulty adapting to stressful circumstances, anxiety, and fleeting suicidal ideation. However, it is not just the presence of psychiatric symptoms that mandates the assignment of a higher rating, but rather, the Board must evaluate how the reported symptoms impact the Veteran’s occupational and social functioning. Vazquez-Claudio, 713 F.3d at 117. That is, for instance, simply because the Veteran has panic attacks, and because the 70 percent level contemplates panic, does not mean his psychiatric disorder rises to the 70 percent level. Indeed, the 30 percent, 50 percent, and 70 percent criteria each contemplate some form of panic attacks.
Notably, the Board acknowledges the Veteran’s June 2016 lay statement of record reporting momentary thoughts of suicide. However, on clinical evaluations of 2011, 2013, 2014, and 2015, he specifically denied suicidal or homicidal ideation. He also denied any intent and/or plan to hurt himself or others. In fact, there is no evidence to show that during the current appeal period the Veteran exhibited or resorted to violence or acted upon such impulses. Additionally, the Board observes that the Veteran’s relevant mental history and material evidence of record were specifically considered by the VA medical professionals in formulating their assessments in 2011, 2013, 2014, and 2015. 
Additionally, the Board has taken into consideration the frequency, severity, and duration of the Veteran’s symptoms of panic disorder, as well as his statements regarding his assessment of the severity of his symptoms. However, the symptoms present here, and their resulting effects, do not rise to the level of the next higher ratings. Specifically, while the Veteran experienced panic attacks and depressive symptoms, such symptoms did not occur as frequency or with such severity as the “near-continuous panic or depression affecting the ability to function independently, appropriately, or effectively” that warrants a 70 percent rating. 
Here, the competent evidence of record does not establish that his panic disorder was manifested by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. 
In this regard, the Board assigns great probative value to the VA medical opinions of record. The VA examiners that evaluated the Veteran in 2011, 2013, and 2014 consistently observed the Veteran to be cooperative, alert and fully oriented, with good hygiene, clear and logical thought processes, and good insight and judgment. The record does not show any episodes of neglect of personal hygiene, disorientation, irritability with periods of violence, which is indicative of impaired impulse control, contemplating a 70 percent rating. Furthermore, a VA clinical psychologist in 2013 assessed the Veteran with a GAF score of 55, and in 2014, a mental status examination reflects an improvement with psychiatric symptomatology in the mild or moderate range. While the Veteran’s GAF score in a 2015 examination was rated at 45, this is not itself determinative of the most appropriate disability rating for the current appeal period. As noted above, a rating is based on all the evidence of record that bears on occupational and social impairment. 
With regard to occupational functioning, the record reflects that during clinical interview in 2013, the Veteran reported working in the timber business since 2001, but that he has not worked since 2008. A March 2011 VA examiner found that the Veteran’s panic disorder symptomatology resulted in “a mild impact on his ability to engage in physical and sedentary activity.” A similar opinion was provided by an April 2014 VA psychologist opining that the Veteran’s panic disorder did not appear to be of such severity to render him unemployable. Consequently, the Veteran’s panic disorder was not shown to cause occupational impairment with deficiencies in most areas.
Contrary to the Veteran’s assertions, at no time does the record reflect that he had an inability to establish and maintain effective relationships. Rather, according to the Veteran, he is able to maintain social relationships with his long-term girlfriend, five adult children, and friends. In a November 2011 buddy statement, the Veteran’s fiancé attested to currently living and being together for six years. She observed the Veteran maintain communications with other gentlemen, although she did state he does not have many friends. She further described his relationship with his family as “estranged”. However, her statements are inconsistent with the Veteran’s description from 2013 where he reported having relationships with all five daughters, some who call daily. He also reported having “friends that he talks on the phone with, those who visit him and that he goes fishing with.” Furthermore, as recent as 2015, the Veteran described that his daughter takes him out for groceries. As such, despite the Veteran’s reported symptoms, the record shows that he is able to maintain relationships with friends or acquaintances and lives at home with a supportive family.
Clearly, such findings are not consistent with a higher 70 percent rating which requires symptoms of obsessional rituals, speech intermittently illogical, obscure, or irrelevant, near-continuous depression affecting the ability to function independently, appropriately and effectively; impaired impulse control, spatial disorientation, neglect of personal appearance and hygiene or an inability to establish and maintain effective relationships.
In short, the Board finds that the Veteran’s symptoms during this period of the appeal do not impact his social and occupational functionality in such a way to result in social and occupational impairment with deficiencies in most areas. 
As such, from March 9, 2011 to February 15, 2017, the Board concludes that the Veteran’s panic disorder has not been manifested by symptomatology more nearly approximating the criteria for a 70 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9412, and a rating in excess of 50 percent is not warranted.

From February 16, 2017
Beginning this period, the Board concludes that the Veteran’s panic disorder more nearly approximates a 70 percent rating, but no higher. In so concluding, the Board finds persuasive the competent evidence of record, to include the February 16, 2017 letter from the Veteran’s treating physician establishing the Veteran’s psychiatric symptomatology as a result of his panic disorder. Specifically, the treating physician indicates that the Veteran’s panic disorder is manifested by symptoms of agoraphobia, acrophobia, anxiety, depression, and frequent panic attacks. Based on the severity of the symptoms, the physician opined that the Veteran “is not able to have normal functionality or employment to support himself.” See Statement from A.N.J., M.D. dated February 16, 2017. The Board observes the February 2017 statement probative to demonstrate symptoms that most closely align with occupational and social impairment with reduced reliability and productivity and difficulty in establishing and maintaining effective work relationships. 
However, the Board finds that the next higher rating of 100 percent is not warranted. The Board observes that at no time throughout the duration of the appeal, the evidence of record does not establish that his panic disorder results in total occupational and social impairment. As noted earlier, the Veteran has remained in a relationship throughout the appeal, has maintained relationships with his five daughters and acquaintances. Thus, it cannot be concluded that the Veteran is totally socially impaired. 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9412. 
For the foregoing reasons, the Board finds that, a 70 percent disability rating, but no higher, is warranted beginning February 16, 2017.
Other Considerations
The Board has also considered the provisions of 38 C.F.R. § 3.321(b)(1). See Correspondence dated August 2015. However, in this case, the Board finds that the record does not show that the Veteran’s PTSD is so exceptional or unusual as to warrant the assignment of a higher ratings on an extraschedular basis. See 38 C.F.R. § 3.321(b)(1); Barringer v. Peake, 22 Vet. App. 242, 243-44 (2008).
The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for service-connected disabilities are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant’s service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant’s disability level and symptomatology, then the claimant’s disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extra-schedular referral is required. Thun, 22 Vet. App. 111; VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant’s level of disability and symptomatology and is found inadequate, VA must determine whether the claimant’s exceptional disability picture exhibits other related factors, such as those marked interference with employment and frequent periods of hospitalization. 38 C.F.R. § 3.321(b)(1).
For the Veteran’s panic disorder with agoraphobia, as with all increased rating claims for psychiatric disorders, all psychiatric symptoms are contemplated by the rating criteria, because the criteria consider all psychiatric symptoms that impact occupational and social functioning. As such, the schedular rating criteria by definition reasonably describes the Veteran’s disability level and symptomatology, because the Board has reviewed all of his psychiatric symptoms and then weighed how they impact his occupational and social functioning. Thus, consideration of whether the Veteran’s disability picture exhibits other related factors such as those provided by the regulations as “governing norms” is not required and referral for an extra-schedular rating is unnecessary. 
Accordingly, the Board concludes that referral for extraschedular consideration is not warranted for this claim.

TDIU
For the period prior to February 16, 2017, the Board is granting referral of TDIU for extraschedular consideration. Beginning February 16, 2017, the Board finds that TDIU is warranted on a schedular basis. 
A TDIU may be assigned where the schedular rating is less than total when the disabled person is, in the judgment of the Board, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The regulations provide that if there is only one such disability, this shall be ratable at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent disability or more. 38 C.F.R. § 4.16(a). Marginal employment shall not be considered substantially gainful employment. Moreover, the existence or degree of nonservice-connected disabilities or previous unemployability status will be disregarded where the percentages referred to in this paragraph for the service connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the veteran unemployable.
The Veteran’s compensable service-connected disabilities are panic disorder with agoraphobia rated at 10 percent disabling from January 20, 2004, rated at 30 percent disabling from May 26, 2009, and 50 percent disabling from March 9, 2011; bilateral hearing loss rated at 20 percent disabling from September 30, 2011; tinnitus rated at 10 percent disabling from September 30, 2011; noncompensable erectile dysfunction associated with panic disorder; with a combined evaluation for compensation at 60 percent from September 30, 2011. 
If a claimant does not meet the threshold criteria, a total disability evaluation may still be assigned, but on a different basis. It is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). The rating boards are required to submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of Veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). Id.
For the period prior to February 16, 2017, as the Veteran does not meet the applicable percentage standards, the Board finds that referral of the issue for extraschedular consideration is warranted. See 38 C.F.R. § 4.16(b). 
For the period beginning February 16, 2017, with the Board’s grant above of a 70 percent rating for service-connected panic disorder, the Veteran met the schedular criteria for a TDIU. 38 C.F.R. § 4.16(a). In this regard, the Board finds that the evidence of record demonstrates that the Veteran’s service-connected panic disorder renders him unable to secure or follow a substantially gainful occupation, and therefore, TDIU is warranted for the period beginning February 16, 2017. In support of such finding, the Board gives probative value to the February 2017 statement from the Veteran’s treating physician reflecting his overall impression at that time that the Veteran’s panic disorder symptoms have increased in severity where he is “not able to have normal functionality or employment to support himself.” 
Accordingly, resolving doubt in the Veteran’s favor, TDIU is granted, from February 16, 2017.
REASONS FOR REMAND
The Board is precluded from granting TDIU on an extraschedular basis in the first instance. 38 C.F.R. § 4.16(b). Accordingly, the Board will remand the matter for referral to the appropriate agency.
The matter is REMANDED for the following action:
The AOJ must refer the matter of entitlement to a TDIU on an extraschedular basis to the Director, Compensation Service for a determination as to whether the Veteran is entitled to assignment of a TDIU under the provisions of 38 C.F.R. § 4.16(b). Thereafter, if the benefit sought on appeal remains denied, the AOJ should readjudicate the matter, and returned the case to the Board, if otherwise in order.

 
KELLI A. KORDICH
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD S. An, Associate Counsel